FOR THE

## COUNTY OF WORCESTER, SEPTEMBER TERM, 1873, AT WORCESTER.

[CONTINUED FROM VOL. CXIII.]

PRESENT :

HON. HORACE GRAY, CHIEF JUSTICE.
HON. JAMES D. COLT,
HON. SETH AMES,
HON. MARCUS MORTON,        } JUSTICES.
HON. WILLIAM C. ENDICOTT,

GEORGE K. PALMER & others *vs.* ADDISON M. SAWYER.

A partnership agreed to take, and the other contracting party agreed to give, upon a future day named, a lease of a building. Before that day the partnership was dissolved. In a suit by the once partners against the owner of the building for refusing to execute the lease, there was evidence that the defendant, knowing of the dissolution, had waived his right to have a lease executed by more than one of the plaintiffs. *Held*, that the dissolution of the partnership did not of itself release the defendant from his agreement, because all who had been members of it might still sign the lease; and that the question of waiver should be submitted to the jury.

A partnership agreed to take, and the other contracting party agreed to give, upon a future day named, a lease of a building. Before that day the partnership was dissolved by the purchase by one member of the interests of the others. In a suit by him, in which he used the names of his former partners as plaintiffs with him, against the owner of the building for refusing to execute the lease, it appeared that one of the plaintiffs, who had sold his partnership interest, had never been himself ready to execute the lease, had never

authorized the action, and had filed a paper in the suit withdrawing from it; but there was evidence that the defendant, knowing of the dissolution of the partnership, had waived his right to have the lease executed by this plaintiff. *Held*, that the question of waiver was for the jury.

An allegation of a readiness to perform those of mutual and dependent covenants which are binding upon the plaintiff is not supported by evidence of the defendant's waiver of such performance.

CONTRACT by George K. Palmer, Charles F. Phillips and George D. Bates against the defendant for the non-performance, by a refusal to execute the lease therein specified, of the following contract, signed and sealed by all the parties :

" This agreement made and concluded this thirtieth day of November, A. D. 1870, by and between Addison M. Sawyer, of Athol, in the county of Worcester, and Commonwealth of Massachusetts, of the one part, and George K. Palmer, C. F. Phillips, and Geo. D. Bates, all of Montague, in the county of Franklin, copartners in business under the firm name of Palmer, Phillips & Co., of the other part, witnesseth :

" That the said Addison M. Sawyer covenants and agrees with the said parties of the second part, that he will erect a certain building upon land of Benjamin Estabrook, on the south side of Main Street, in Athol, near the dwelling-house of P. A. Fay, provided he can secure a deed of said land at a cost not to exceed three hundred dollars, and will rent said building to said parties of the second part in accordance with the agreements hereinafter contained. The said Sawyer agrees that said buildings shall be one hundred feet long and twenty-five feet wide, two stories in height, with a basement story underneath. Both stories to be nine and one half feet high, with windows in both stories not more than four feet apart all around the building, with suitable entrances from the outside. The first story to be ceiled overhead, and the walls in first and second stories to be lathed and plastered, and the ceiling in the second story also to be lathed and plastered. Two doors in basement and windows sufficient for lighting the same, and a good floor to be erected in basement — the whole to be completed in accordance with a plan already furnished by the parties of the second part, with an additional office room twenty by twenty-five feet.

" The said Sawyer agrees to put shelves in the packing room and benches in the first and second stories suitable for the accommodation of the business of manufacturing wallets, it being hereby understood that this agreement is based upon the consideration that the parties of the second part agree to rent said buildings for the purpose of manufacturing diaries, portemonnaies, wallets, or any other articles of merchandise they may desire, and that they have no right to occupy the same by virtue of this agreement for any other purpose than that of manufacturing as aforesaid. And the said Sawyer agrees that said building shall be completed on or before the first day of May, A. D. 1871, and that he will lease the same to the parties of the second part for and during the term of five years from the said first day of May, A. D. 1871. That the said parties shall for the first two years be exempt from the payment of any rent, and for the remaining three years of the term they shall pay him the annual rent of ten p r cent. on the actual cost of the land and building, including all sums actually paid for the same, excepting and reserving the cost of shelves and benches, to be put in and given to the said parties of the second part free from cost. And the said parties of the second part agree to lease said building for the term above specified and for the purpose before mentioned, and to pay the rent stated in quarterly payments, and they further agree that they will do no act nor suffer anything to be done in said building which shall increase the insurance on said building beyond what is necessary for the ordinary and legitimate prosecution of the business before mentioned. And the said parties of the second part have the privilege of purchasing said land and building at any time within five years from May 1, A. D. 1871, upon payment of the actual cost of the same, completed as aforesaid."

The declaration alleged that the plaintiffs " had performed and stood ready to perform each and all the matters and things which they by said contract were bound to do, but the defendant, unmindful of his obligations thereunder, though duly requested, neg-'ected and refused to carry out his agreements with the plaintiffs."

The answer denied " the several allegations of the declaration," and alleged that the defendant " was ever ready to perform the

contract made with the plaintiffs, but the plaintiffs were never ready to perform the same on their part."

At the trial in the Superior Court, before *Bacon,* J., evidence was introduced on the part of the plaintiffs, tending to establish the following facts: In the fall of 1870, the defendant sent a message to George K. Palmer, one of the plaintiffs, requesting him to come to Athol, with a view of making an arrangement to remove the business of the firm of Palmer, Phillips & Co. from Montague, where the firm had been previously established in the business of manufacturing wallets, to Athol. Palmer visited Athol, and, after conferences, the contract declared on was entered into between the parties. The defendant erected a building substantially in accordance with the contract. It was not completed May 1, 1871, but the plaintiffs waived this non-performance of the contract, and made no demand for a lease until afterward.

On May 12, Palmer bought out both his partners, and the firm was dissolved by mutual consent, Palmer taking all its rights and assets and assuming all its liabilities. It was admitted, both by Palmer and by Phillips, that the latter, after leaving the firm, had never individually offered to perform any of the covenants of the contract, had never demanded a lease, and had never been willing personally to carry on the business of manufacturing in the building erected by the defendant, nor had he been consulted about the bringing of this action, or ever authorized the use of his name as a plaintiff therein.

May 19, Palmer had an interview with Sawyer at Athol. He testified that the first time he met Sawyer he told him he had bought out his partners; that the meeting was casual, and that was all that was said on the subject; that on the same day, in the evening, he rode out with Sawyer, who asked him if he was going to board in the lower village of Athol, and said that he should not have the lease if he boarded there; that he replied that he had not determined to board in the lower village, but that he should not be dictated to, as to where he should board; that Sawyer replied that he should not do any more fixing up, until the question as to boarding in the lower or upper village of Athol was

Palmer *v.* Sawyer.

decided; that at this time the building was nearly or quite done, but there was fixing up and grading to be done about it; that on May 31, he was in Athol, and went to the upper village to Sawyer's place to demand a lease; that he saw Sawyer in the yard of the hotel. "I asked him if he insisted on the condition that he made the 19th, that I should live in the upper village. He said he most certainly did; that he meant it when he said it, and he meant it now. I told him I was there to demand a lease in the name of the firm. He said we should n't have it unless I would board in the upper village; that he did n't get us there for our good looks, but for the business. Sawyer said he did not care whether I took the lease or not, there were other parties ready to take it."

One Glazier testified: "May 19, I was in Athol. I rode up with Palmer to see the shop; I saw Sawyer. He said, 'Palmer, you have bought out Phillips.' Palmer said, 'Yes.' This was all at that time. I saw Sawyer again that day alone. He hailed me as I was riding by. He said he understood that Palmer, Phillips & Co. had failed. I said 'No,' that they had had a heavy loss in Boston, but that it was all fixed up right. He asked me if Palmer would be all right alone, and I said 'Yes.' He asked if I was going in with Palmer. I said, 'No.' Sawyer said he had done all his business with Palmer, that he regarded him as the principal man of the firm; that he did n't think much of Phillips. Before this he came into my store in Boston and said they wanted Palmer there; were bound to have him there, and wanted me to send to him. May 31, I was present at Athol upper village, in the yard of the hotel, at the conversation there. Palmer said, 'Do you hold to the conditions you made when I last saw you about the lease.' Sawyer said, 'Most certainly.' Palmer then said, 'I demand the lease according to the contract.' Sawyer said he could n't have it unless he boarded in the upper village; 'We did n't get you here for your good looks, but for the business; if you board in the lower village, you won't be thought anything of up here.' He also said in this conversation, 'I don't care whether you have the lease or not; other parties want it for business I would rather nave than yours.'"

The following letter, produced by the plaintiffs, was put in evidence by the defendant:

"Athol, June 1, 1871.

"Messrs. Palmer, Phillips & Co. Gents: I have learned this day that a report is current in Athol that I have refused to give a lease of my shop, in Athol, to your company, upon a demand made by Mr. Palmer, a member of your firm. I am very much surprised to learn that such a report is in circulation, as it is without foundation in fact. Last week, on Monday, the 22d ult., I directed and mailed a letter to your firm at Montague, saying that the shop was ready according to contract; after which I heard nothing till yesterday from any one of you, when Mr. Palmer called on me, and I at that time informed him that he could have a lease in accordance with the terms of our agreement. I am ready to execute and deliver to you, gentlemen, such a lease, and only expect, on your part, a faithful performance of all the stipulations expressed in the contract with you, both in letter and spirit. When Mr. Palmer made a demand upon me for a lease, my reply was, ' You can have it,' and without any reply from him, he left me, and since then the report above stated is circulated. Yours truly, A. M. Sawyer."

It was in evidence that between the interview of May 31 and the time when this letter was handed to Palmer by Sawyer's messenger, June 1, Palmer had concluded an agreement with gentlemen in the lower village of Athol, for the erection of a building for the accommodation of his business, to be moved there from Montague.

The defendant requested the judge to rule that the plaintiffs could not maintain their action for the following reasons:

"1. That the contract, upon which this action is brought, was with the firm of Palmer, Phillips & Co., in their copartnership capacity, and the voluntary dissolution of said firm before any lease was executed, or there was any breach of contract, deprived said firm, or any member of it, of any right of action against the defendant on account of his refusal to give a lease upon a demand made by one of the members in the name of the firm. And the fact that there is evidence in the case of a demand made

Palmer *v.* Sawyer.

by one of the members of the firm in the name of the firm, which is the only evidence of any demand for a lease, estops the plaintiffs from claiming any waiver on the part of the defendant of his right to hold each plaintiff individually liable on said contract:

" 2. The agreement was to be executed on both sides at the same time by the execution of a lease, and there must have been a demand and an offer to perform on the part of each plaintiff, and there is no evidence in this case of such demand and offer to perform:

" 3. The members of the firm of Palmer, Phillips & Co. could not transfer their interest in said agreement to any individual member thereof so that after dissolution he could bring an action in the name of the firm, for damages resulting in consequence of a breach of said agreement, occurring after dissolution of the firm, without proof that each individual member of the firm was ready and offered to perform the stipulations in the agreement on his part, and there is no such proof in this case:

" 4. The firm having dissolved before any alleged breach of the agreement upon which this action is brought, and two members of the firm having changed their relations with said firm, so that no damage had resulted to them in consequence of a breach of said agreement after said dissolution, the remaining member of the firm cannot maintain an action in the name of the firm for damages. The damages, if any, in this action must be to all of the members of said firm in their copartnership capacity, and not to any particular member, to the exclusion of the other member or members."

The plaintiffs claimed the right to go to the jury, on the question whether the defendant had not waived any rights which he might have had, to consider himself, by reason of the dissolution, exonerated from performance of the contract on his part as set forth in his first and second prayers, and further claimed that the court, in view of the evidence, was not warranted in granting any of the prayers for instructions, and further that the matters suggested and set forth, in the prayers for instructions, were not open to the defendant under his answer.

The court ruled in conformity to the prayers of the defendant, and without permitting the plaintiffs to go to the jury on any question of fact, ruled that the action could not be maintained, and directed a verdict for the defendant.

The jury returned a verdict for the defendant, and the plaintiffs alleged exceptions which were argued at October term, 1872.

*W. S. B. Hopkins,* for the plaintiffs.

*G. F. Hoar,* for the defendant.

AMES, J.    The dissolution of the partnership between the plaintiffs, which is alleged to have occurred after the date fixed for the commencement of the intended term, and before any lease was demanded, does not of itself release the defendant from his obligation.    He was to erect and finish the building, and prepare it for use, as their workshop.    He would therefore be in a position to know when it was ready for occupation, and should then have tendered the lease, or at least have notified them that he was ready on his part to carry out the contract.    All that he was entitled to insist upon was that they should take the lease jointly, and that the building should be used for the purposes specifically agreed upon.    By the dissolution of their partnership, they did not disable themselves from being joint lessees.    They had made no promise not to dissolve their partnership.    If they had actually taken the lease, and the next year, the next week, or the next day had dissolved the firm, it would have been no violation of any of the defendant's legal rights.    By purchasing the interest of his two partners, Palmer would become the beneficial or equitable owner of their rights in the lease, if the lease had been given.    Why might he not become so in a lease contracted for and yet to be given?    The case which the plaintiffs present is that this change in the firm was fully known to the defendant, that he assented to it, and consented that Palmer should be the sole lessee ; that all he desired was the transfer of the plaintiff's business to Athol, and its establishment in his building, and that he expressly waived all objection founded upon the withdrawal of two of the plaintiffs from the business, and recognized Palmer as the only party beneficially interested in the contract.    *Fox* v. *Harding,* 7 Cush. 516.    The answer which he has filed does not

insist upon this dissolution as a ground of defence. In his letter of June 1, he treats the demand made upon him by Palmer in the name of the firm, for the delivery of the lease, as a valid demand, and so far from suggesting any reason for refusing compliance, he offers expressly to execute the lease. But if he had previously refused, and Palmer, acting in good faith, had contracted for another place, this offer by the defendant was of course too late to justify any such previous refusal.

The question then for the jury would be, Had there been a wrongful refusal on the defendant's part to fulfil his contract? If there had been, any suit to recover damages for the breach could only be in the joint names of the three plaintiffs. If the defendant had by act or agreement recognized Palmer as the party beneficially interested in the contract, and had refused to fulfil it for insufficient reasons, waiving all other objections except that as to the boarding-house, the action might well be maintained, and the damages to Palmer for the breach could be recovered in the suit. *Brewer* v. *Winchester*, 2 Allen, 389. Upon all these points the plaintiffs were entitled to go to the jury, which under the rulings of the court they have had no opportunity to do. Whatever may be thought of the rulings of the court, given upon the request of the defendant, considered as abstract legal propositions, they were not appropriate to the actual position of the case, inasmuch as they leave the question of the alleged waiver wholly untouched. *Exceptions sustained.*

After the above decision a new trial was had in the Superior Court, before *Wilkinson,* J.

In the mean time the plaintiff Phillips had filed in the case the following paper: " I, Charles F. Phillips, one of the plaintiffs in said action, hereby direct the discontinuance thereof and withdraw myself therefrom as plaintiff. Charles F. Phillips." And the defendant had filed this additional answer : " The defendant not waiving, but relying on all the matters set forth in his answer heretofore filed, saith that since the last continuance, and at the present term of the court, the plaintiff Phillips hath disappeared from said suit, and the same cannot proceed in the name of Palmer alone."

At the new trial, in addition to the evidence given at the for mer trial, it appeared from the testimony of the plaintiff Palmer that he bought the interests in the business of both his partners May 12, 1871, and received from the plaintiff Phillips a writing as follows:

"In consideration of $3240 received this twelfth day of May, from G. K. Palmer, I transfer all my interest in the stock of goods manufactured and in process of manufacture, all raw stock, tools of whatever description, &c., now owned by Palmer, Phillips & Co., also all my right and interest in any account now due, or that hereafter may become due said firm, to the said G. K. Palmer, in fact selling and conveying to G. K. Palmer all the interest I now have in the firm of Palmer, Phillips & Co. Charles F. Phillips."

It was admitted that the plaintiff Phillips, after the sale of his interest in the partnership, had never personally offered or been willing to perform the contract with the defendant; that he had never personally demanded a lease of, or been willing to engage in the business of manufacturing in, the defendant's building.

Palmer also testified: "At the time I bought out Phillips there was an agreement, not in writing, about indemnity. We were then embarrassed by a loss in Boston. I told him as soon as I could arrange that, I would give him a bond of indemnity against any loss that might arise from debts of the firm. This arrangement was not accomplished till March, 1873. He has never asked me for the bond, nor have I offered him one until this term, after he filed his paper in the case. I then tendered him a bond of indemnity, which he refused to take."

The judge having intimated that he should rule that upon these facts the plaintiffs could not maintain the action, the case, by consent of parties, was reported to this court; and judgment was to be entered for the defendant, or a new trial granted, as the court might direct.

The case was argued upon this report, by the same counsel, at this term.

AMES, J. When this case was before the court on a former occasion, it was decided that the reasons advanced by the defend-

ant for not giving the lease were insufficient, that the dissolution of the firm was not a violation of his rights, inasmuch as the plaintiffs might be joint lessees although they had ceased to be partners, and that the plaintiffs were entitled to go to the jury upon the question whether the defendant had waived any objection to the prosecution of the business by one member of the firm instead of by all the partners. A new trial was accordingly ordered. At this new trial the defendant takes the point that as this is a case of mutual and dependent stipulations, the plaintiffs, in order to maintain their suit, must show an offer, coupled with an ability, to fulfil the contract on their own part; and that as it now appears that one of them had never individually offered or been willing to perform his covenant, or personally to engage in the proposed business, and had since the first trial withdrawn from the suit, and directed its discontinuance, the action can no longer be maintained.

But if the defendant had waived any objection founded upon the fact that Palmer was to occupy the premises and carry on the business alone, and not jointly with the other plaintiffs, the unwillingness of Phillips to take part in it was a matter of no consequence. This was a question of fact, upon which Palmer claimed, correctly as we think, that he had a right to go to the jury. All that remained to be done in that case was that the defendant should give the title which he had promised to give. If it had been arranged, with the concurrence of the lessor, that Palmer should be accepted as the separate occupant, and should be accepted also instead of the firm, as the party to carry on the intended manufacture upon the premises, then it might be implied that his acceptance of the lease would be sufficient, and he might maintain this action in the name of the firm. The verdict must therefore be set aside, and a *New trial ordered.*

A new trial was accordingly had in the Superior Court, before *Colburn,* J., at which it appeared that " the plaintiff Phillips was never ready or willing to take or execute a lease of the premises, or to fulfil the contract on his part, after the dissolution of the firm."

The plaintiffs offered evidence substantially like that introduced at the former trials and above set forth. "To the admission of all this evidence the defendant objected, and specially to any evidence which it was claimed tended to prove a waiver on his part of any performance or readiness to perform the contract on the part of the plaintiffs or either of them, and insisted that the same was not competent under the declaration. But the court admitted the evidence."

The defendant, among other things not material to the decision, requested the court to instruct the jury, that the evidence would not warrant a verdict for the plaintiffs on the issue made by the pleadings ; and that if the jury believed that the defendant never refused to give a lease to the firm, but was always ready to do so, the plaintiffs could not recover.

These requests the court refused, but instructed the jury as follows : " This right to require that the plaintiffs should be joint lessees, the defendant might waive, and if, after having been informed of the dissolution of the firm, and that Palmer had succeeded to the rights of the firm in the business, and under the agreement with the defendant, he assented to the change, and consented that Palmer should be sole lessee, and expressly, either by words or unequivocal acts, waived all objection founded on the withdrawal of two of the plaintiffs from the business, and recognized Palmer as the sole party beneficially interested in the contract, and afterwards refused to perform his agreement, on the sole ground that Palmer would not agree to board in a certain village, this action may be maintained, and the fact that Phillips was not willing to become a party to the lease was of no importance."

The verdict was for the plaintiffs, and the defendant alleged exceptions, which were argued by the same counsel, before the same judges, in Boston, January, 1876.

MORTON, J. / When an action is brought upon a contract containing mutual and dependent stipulations, it is necessary for the plaintiff to prove, either a performance of, or a readiness to perform, all the stipulations on his part upon which the obligation of the defendant depends. When by the contract the acts of per-

formance by each party are to be concurrent, the plaintiff must prove his readiness to perform. If, on account of disability or for any other reason, he is not ready and willing to perform, he cannot maintain an action against the other party for a breach of the contract.

His declaration must allege all the facts necessary to constitute his cause of action. It must, therefore, allege performance or a sufficient excuse for non-performance, where performance by him is a condition precedent to the liability of the defendant, or readiness to perform on his part, where the acts to be performed by each are concurrent. This is the clear result of the authorities. *Hapgood* v. *Shaw*, 105 Mass. 276. *Carpenter* v. *Holcomb*, 105 Mass. 280. *Murdock* v. *Caldwell*, 10 Allen, 299. *Smith* v. *Boston & Maine Railroad*, 6 Allen, 262. *Colt* v. *Miller*, 10 Cush. 49.

Applying these principles to the case at bar, it is clear that, upon the facts disclosed at the last trial, the plaintiffs cannot maintain their action without an amendment of the pleadings.

By the contract sued on, the defendant agrees that he will erect a building and lease the same to the plaintiffs, for the purpose of manufacturing diaries, wallets and other merchandise, for the term of five years from May 1, 1871, at a stipulated rent. The plaintiffs agree " to lease said building for the term above specified and for the purpose before mentioned, and to pay the rent in stated quarterly payments."

The stipulations, on the one part to give, and on the other part to take, a lease, were mutual and dependent. The defendant had a right to insist that, upon his giving a lease, the three plaintiffs should, as a concurrent act, either execute indentures of lease, or accept a lease by a deed-poll in such manner as to make them his tenants and bind them to the performance of the obligations of the lease.

Under the authorities above cited, it is clear that the plaintiffs must aver and prove a readiness on their part to perform their stipulations. They do, in their declaration, allege that " they had performed and stood ready to perform each and all the matters and things which they by said contract were bound to do." But it appears in the bill of exceptions now before us, that the co-

partnership between the plaintiffs was dissolved before the time for performance, and that " the plaintiff Phillips was never ready or willing to take or execute a lease of the premises or to fulfil the contract on his part after the dissolution of the firm." Thus the proof negatives the essential allegation that the plaintiffs were ready to perform.

To meet this difficulty, the plaintiff Palmer relies upon proof that the defendant waived his right to have the three plaintiffs join in or take the lease, and agreed that he would accept Palmer as the sole lessee under the contract.

The learned judge who presided at the trial submitted this question to the jury, instructing them that if the defendant, " after having been informed of the dissolution of the firm, and that Palmer had succeeded to the rights of the firm in the business, and under the agreement with the defendant, assented to the change, and consented that Palmer should be sole lessee, and expressly, either by words or unequivocal acts, waived all objections founded on the withdrawal of two of the plaintiffs from the business, and recognized Palmer as the sole party beneficially interested in the contract, and afterwards refused to perform his agreement, on the sole ground that Palmer would not agree to board in a certain village, this action may be maintained, and the fact that Phillips was not willing to become a party to the lease was of no importance."

The bill of exceptions shows that at this trial the defendant objected to all evidence of such waiver or agreement for a substituted performance, upon the ground that it was not competent under the declaration. The precise question now before us, therefore, is not whether the plaintiffs' proofs would sustain their action upon proper pleadings, but whether, under the declaration as it now stands, it was competent to admit evidence of such waiver or new agreement, and to submit it to the jury.

The allegations of the declaration are that the plaintiffs " had performed and stood ready to perform each and all the matters and things which they by said contract were bound to do." The evidence tends to prove that the plaintiffs were not ready to perform according to the contract, but that the defendant had waived

the right to require such performance, and had agreed to accept Palmer as sole lessee.

A similar question arose in *Colt* v. *Miller*, 10 Cush. 49, which was a suit upon a special contract, in which the plaintiff alleged performance of what the agreement required of him, and proved matter which excused him from such performance, to wit, a waiver thereof by the defendant. The court held that there was a fatal variance, upon the ground that " a waiver, by one party to an agreement, of the performance of a stipulation in his favor, is not a performance of that stipulation by the other party. It is an excuse for non-performance, and should be so pleaded." See also *Pomroy* v. *Gold*, 2 Met. 500; *Murdock* v. *Caldwell*, 10 Allen, 299.

So, in the case at bar, proof that the defendant waived the performance required by the contract on the part of the plaintiffs, and agreed to a substituted performance, does not meet and satisfy the allegation of performance or readiness to perform, but is a variance.

When this case was before us in its previous stages, the question now presented was not considered by the court. Upon referring to the two former bills of exceptions, it is seen that in neither of them was any question made as to the form of the declaration. The evidence as to a waiver or new agreement was admitted at the former trials without objection by the defendant, and no special ruling was requested of the court as to a variance between the allegations and proofs. But at the last trial the defendant objected to all evidence of a waiver or an agreement for a substituted performance, on the ground that it was a variance, and requested the court to rule that such evidence was not open to the plaintiffs under their declaration. The question was thus distinctly raised at the trial, and the plaintiffs thus notified of the necessity of an amendment of their pleadings.

For the reasons stated above, we are of opinion that the objection of the defendant to the admission of any evidence of a waiver or new agreement under the declaration as it now stands, should have been sustained, and that such evidence was erroneously admitted. *Exceptions sustained.*