JAMES H. FREELAND · & others *vs.* ERNEST F. RITZ
& another.

Suffolk.   March 4, 1891. — July 28, 1891.

Present: HOLMES, KNOWLTON, MORTON, & LATHROP, JJ.

*Lease — Statute of Frauds — Waiver — Pleading.*

It is no objection to a written contract that some of its terms are to be fixed by something to be done in the future, if that something is done before an action is brought thereon ; and if it is then in writing, the provisions of the statute of frauds are complied with.

A written agreement for the sublease of rooms in a building in process of erection, which recites an agreement by the owner to lease the building to the proposed sublessor, and provides that such sublease is to be made as soon as the building is ready for occupancy and a lease thereof is delivered, and to be "subject in all respects" to such owner's agreement and lease, is sufficient to satisfy the statute of frauds, if the lease of the building, though not at the time in existence, is executed and delivered before action is brought for a breach of the agreement for a sublease.

If a lease tendered for acceptance differs in various particulars from the form agreed upon by the parties, and the proposed lessee, without objecting thereto, expresses his unwillingness to accept a lease in any form, he may be found to have waived a strict compliance by the lessor with the terms of the agreement.

In an action for breach of an agreement to sublet rooms in a building in process of erection, which agreement is incomplete in itself, because made subject to a proposed lease to the plaintiff to be executed when the building is ready for occupancy, the terms of such lease to the plaintiff, if executed before the action is brought, should be set forth, so far as they are material to complete the agreement sued upon, with appropriate allegations; and the plaintiff, if he relies upon a waiver by the defendant, should plead it as an excuse for nonperformance.

CONTRACT, for breach of an agreement to lease certain rooms on the sixth floor of the Boylston Building in Boston.   Writ dated April 20, 1889.   Trial in the Superior Court, before *Pitman*, J., who ordered a verdict for the defendants, and reported the case for the determination of this court.   If the plaintiffs could recover on the evidence in any form of action, the verdict was to be set aside and the case stand for trial; otherwise, judgment was to be entered upon the verdict.   The facts appear in the opinion.

*C. Browne & G. A. O. Ernst*, for the plaintiffs.

*H. W. Bragg*, for Ritz.

*W. S. Slocum*, for Glines.

LATHROP, J.    This is an action of contract, brought by the members of the firm of Freeland, Loomis, and Company against the members of the firm of Ritz and Glines, for the breach of an agreement, under seal and signed by the parties, to accept a lease of certain rooms in a building.

The agreement declared on recited that a building was then in process of erection by the Boylston Market Association, on the corner of Washington Street and Boylston Street, in Boston; that Freeland, Loomis, and Company had entered into an agreement with said association for a lease of said building as soon as the same should be completed; and that Ritz and Glines were desirous of obtaining from Freeland, Loomis, and Company a lease of part of said building, " to wit, rooms on the sixth floor thereof, as marked on plan of said floor, in the possession of Freeland, Loomis, and Company, containing about twenty-five hundred (2,500) square feet, more or less, and situated in the northeasterly corner of said building, for the purpose of there conducting the photographing business."   Freeland, Loomis, and Company agreed, as soon as the building should be ready for occupancy, and a lease thereof executed and delivered to them, to execute and deliver, and Ritz and Glines agreed to accept, " a lease of the rooms aforesaid, to be. used solely and exclusively for the business aforesaid, for a period of five (5) years from the date of the completion of said building, at an annual rental of twenty-five hundred dollars ($2,500), payable in equal monthly instalments, the lease to be in substantial accordance with the blank form hereunto annexed, and to be made subject in all respects to the terms and conditions of the said agreement and lease between said Freeland, Loomis, and Company and said Boylston Market Association."

1.  The defendants contend that, inasmuch as the agreement provides that the lease is "to be made subject in all respects to . . . the said agreement and lease between " the plaintiffs and their lessor, which lease was not then in existence, there is no sufficient agreement or memorandum to satisfy the statute of frauds.   Pub. Sts. c. 78, § 1, cl. 4.

The agreement declared on is dated April 17, 1888, and it is clear that, considered alone, it is insufficient to satisfy the statute, for some of its terms were then uncertain, and might never

be made certain. *May* v. *Ward*, 134 Mass. 127. *Ashcroft* v. *Butterworth*, 136 Mass. 511. What was then uncertain has, however, since been made certain, as it appears by the report upon which the case comes before us that in January, 1889, before this action was brought, a lease in writing of the entire building was delivered to the plaintiffs by their lessor.

It is a well settled rule of law, that, while the memorandum must express the essential elements of the contract with reasonable certainty, these may be gathered either from the terms of the memorandum itself, or from some other paper or papers therein referred to. If one of a series of papers which appear to have relation to the same contract is signed by the party to be charged, this is enough, as all the papers are to be considered together, as forming one contract or memorandum. There is no doubt also that parol evidence is admissible to identify any paper referred to. *Atwood* v. *Cobb*, 16 Pick. 227, 230. *Lerned* v. *Wannemacher*, 9 Allen, 412. *Rhoades* v. *Castner*, 12 Allen, 130. *Beckwith* v. *Talbot*, 95 U. S. 289. *Grafton* v. *Cummings*, 99 U. S. 100. *Ryan* v. *United States*, 136 U. S. 68, 83. *Peck* v. *Vandemark*, 99 N. Y. 29. *Louisville Asphalt Varnish Co.* v. *Lorick*, 29 S. C. 533. *Ridgway* v. *Wharton*, 6 H. L. Cas. 238. *Fitzmaurice* v. *Bayley*, 9 H. L. Cas. 78, 102. *Baumann* v. *James*, L. R. 3 Ch. 508. *Shardlow* v. *Cotterell*, 18 Ch. D. 280, and 20 Ch. D. 90. *Studds* v. *Watson*, 28 Ch. D. 305. *Oliver* v. *Hunting*, 44 Ch. D. 205. *Long* v. *Millar*, 4 C. P. D. 450. *Cave* v. *Hastings*, 7 Q. B. D. 125.

The defendants, however, contend that these principles apply only to papers already in existence when the instrument signed by the party sought to be charged is executed; and, in support of this view, rely upon the case of *Wood* v. *Midgley*, 2 Sm. & G. 115; *S. C.* on appeal, 5 DeG., M. & G. 41. This was a bill for specific performance of a contract of sale of land. Some of the terms had been reduced to writing, but not signed. The purchaser paid his deposit money to the auctioneer who sold the land, and he signed the following receipt: " Memorandum. Mr. Thomas Midgley has paid to me the sum of £50 as a deposit and in part payment of £1,000, for the purchase of the Ship and Camel public-house at Dockhead, the terms to be expressed in an agreement, to be signed as soon as prepared." Vice Chan-

cellor Stuart overruled a demurrer to the bill, on the ground that the memorandum to be prepared and signed was only the fair copy of the draft as settled and agreed to. On appeal, the demurrer was sustained by Lord Justice Turner and Lord Justice Knight Bruce, on the ground that the agreement referred to, although it fixed the price, left other points to be determined. " The conditions of sale were to be adapted to a sale by private contract, and were to be subject to a future agreement." The case is, therefore, one of an agreement incomplete when made, and which never was completed. See also *Ridgway* v. *Wharton*, 6 H. L. Cas. 238 ; *Fitzmaurice* v. *Bayley*, 9 H. L. Cas. 78 ; *Rummens* v. *Robins*, 3 DeG., J. & S. 88.

In *Brown* v. *Bellows*, 4 Pick. 179, the plaintiff and the defendant were owners of a water privilege, with the building thereon, etc. The plaintiff agreed to sell his interest, and the defendant agreed to buy it, " at such prices as shall be agreed on and awarded by three men, one chosen by the plaintiff, one by the defendant, and the third by the two thus chosen, which award shall be final and binding on the parties." After the price had been thus determined in writing, the defendant refused to perform his agreement. The plaintiff brought an action for covenant broken, to which the defendant set up the statute of frauds, contending that the referees were not named in the agreement, and that it depended wholly upon parol evidence to determine who they were. This objection was disposed of by the court's saying that the contract had been performed in this respect. The defendant further contended that the price should have been fixed by the agreement, whereas it was to be ascertained by the referees. But this objection was overruled. The last point decided in this case, therefore, is a direct authority for the proposition that it is no objection to a written contract that some of its terms are to be fixed by something to be done in the future, if that something is done before action is brought; and that, if it is in writing, the provisions of the statute of frauds are complied with.

We are therefore of opinion that the statute of frauds is no defence to this action.

2. The defendants further contend, that the plaintiffs are not entitled to recover, because they have not performed their part

of the agreement. It appears from the report that the plaintiffs, on February 11, 1889, sent to the defendants a letter in regard to the rooms in the new building, and in regard to their lease, to which letter the defendants made no reply. There was evidence that duplicate leases were sent to the defendant Ritz about February 15, 1889; that he afterward sent one of them to the defendant Glines; that these leases were in the possession of the defendants at the time of the trial; that the plaintiffs had not seen or heard from Ritz after sending the leases; that, two or three weeks after February 15, Glines had called on the plaintiffs and said that he was ready to sign but Ritz would not, and that Ritz would not go in company with him; and that neither defendant had signed the lease, or offered to sign any form of lease. Glines, who was called as a witness by the plaintiffs, testified that Ritz declined to have anything to do with him in this matter; and that he, Glines, had said that he could not sign because Ritz would not, as he had not the money to carry it out if he did sign. It was agreed that prior to the bringing of the action the defendants had said to the plaintiffs that they should not sign the lease, and the plaintiffs might go ahead and let the rooms.

The defendants' counsel pointed out, at the argument, several particulars in which, as they contended, the lease sent to the defendants differed from the form annexed to the agreement. We do not find it necessary to consider these, as we are of opinion that, on the evidence, the jury might well have found that the defendants made no objection to the lease sent them, were not willing to accept a lease in any form, and therefore waived a strict compliance by the plaintiffs with the terms of the agreement. See *Gerrish* v. *Norris*, 9 Cush. 167, as modified by *Holdsworth* v. *Tucker*, 143 Mass. 369, 375; *Brewer* v. *Winchester*, 2 Allen, 389; *Curtis* v. *Aspinwall*, 114 Mass. 187, 193; *Lowe* v. *Harwood*, 139 Mass. 133.

3. At the trial, the presiding judge ruled that the action in its present form could not be maintained, and ordered a verdict for the defendants, reserving the right to the plaintiffs to move to amend, upon such terms as the Superior Court might order, if, in the opinion of the Supreme Judicial Court, the plaintiffs, upon the evidence, would have the right to recover in any form of action at law, in which event the verdict was to be set aside,

and the case to stand for trial. At the argument in this court, no objection was made either to the form of the action or to the declaration. We have not, therefore, carefully scrutinized either. It is obvious, however, that, as the contract declared on is incomplete in itself, the terms of the lease to the plaintiffs from their lessor, as far as they are material to complete the contract, should be set forth with appropriate allegations; and that if the plaintiffs rely upon a waiver by the defendants, it should be pleaded as an excuse for non-performance. *Palmer* v. *Sawyer*, 114 Mass. 1, 15. Whether the substitute declaration, so called, sufficiently sets forth a waiver, need not be considered, as the point has not been argued.

The result is, therefore, that the verdict is to be set aside, and the case stand for trial. *So ordered.*