NATIONAL CONTRACTING COMPANY *vs.* COMMONWEALTH.

Suffolk. November 14, 1902. — February 27, 1903.

Present: KNOWLTON, C. J., MORTON, LATHROP, & HAMMOND, JJ.

*Contract*, Performance and breach, Construction, Validity. *Pleading, Civil*, Declaration. *Words*, "May."

On a petition by a contractor against the Commonwealth under R. L. c. 201, for alleged breach of a contract for the construction of a section of the metropolitan sewer, it appeared, that the contract required the work to be done in accordance with the specifications of the contract subject to such modifications and additions as the engineer in charge for the respondent should deem necessary, and stipulated, that "if the engineer is of the opinion that at any point sufficient or proper supports have not been provided, he may order additional supports at the expense of the contractor." The engineer ordered that oak ribs should be used in place of pine ribs, and that the petitioner should cease work until oak ribs were substituted. *Held*, that this was not a breach of the contract by the respondent, and that the petitioner was bound to comply with the requirement of the engineer, whose judgment was final, unless he acted in bad faith, of which there was no suggestion.

If a contractor agrees to do certain work in accordance with the requirements of the engineer in charge, it does not excuse him from performing the requirements, that in making them the engineer acted unreasonably, if he acted in good faith.

On a petition by a contractor against the Commonwealth under R. L. c. 201, for alleged breach of a contract for the construction of a section of the metropolitan sewer, it appeared, that by the terms of the contract the prices paid by the Commonwealth were to be received by the contractor in full compensation for work and labor, "and for all loss or damage arising out of the nature of the work . . . or for any unforeseen obstruction or difficulties which may be encountered in the prosecution of the same; and for all risks of every description connected with the work." The contract also contained a clause, called the emergency clause, beginning as follows: "It is further agreed that if an emergency demands, or if the engineer deems it desirable, he may make alterations in the line, grade, plan, form, position, dimensions or material of the work herein contemplated, or of any part thereof, either before or after the commencement of construction." *Held*, that the word "may" in the emergency clause did not mean "shall" but had its natural meaning, and that the provision was intended for the benefit of the Commonwealth alone.

A contract with the Commonwealth for the construction of a section of the metropolitan sewer, contained the following provision: "The engineer shall, once a week, make an approximate estimate in writing of the amount of work done and of the relative value thereof, according to the terms of this contract. . . . And it is expressly understood that said weekly estimates shall only be made when the work progresses in accordance with the provisions of this contract and specifications." Payments were to be made upon these estimates. In a petition by the contractor against the Commonwealth under R. L. c. 201, a

failure of the Commonwealth to furnish the certificates was alleged as a breach of the contract. The respondent demurred on the ground that the petition did not aver, that the work was progressing in accordance with the provisions of the contract. *Held,* that the allegation of the breach was bad for want of this averment.

A contract with the Commonwealth for the construction of a section of the metropolitan sewer required supervision and inspection of the work of the contractor by the engineer for the Commonwealth. By the terms of the contract the Commonwealth had the right to terminate it if the work was not done properly, and everything was to be done "in the manner and according to the plans and specifications and the requirements of the engineer under them." A petition by the contractor against the Commonwealth under R. L. c. 201, alleged as a breach of the contract a failure by the Commonwealth to furnish the required engineering supervision and inspection, but failed to aver, that the petitioner had performed his part of the contract according to the requirements of the engineer, or to set forth facts excusing him from satisfying such requirements. *Held,* that the allegation of the breach was bad for want of one of these averments.

On a petition by a contractor against the Commonwealth under R. L. c. 201, for breach of a contract for the construction of a sewer, it does not matter whether or not a clause in the contract, making the engineer of the Commonwealth in certain cases a referee, is valid, unless the clause is relied upon by the Commonwealth as a defence to the petition.

PETITION, filed May 7, and amended June 10, 1902, under R. L. c. 201, for alleged breach by the Commonwealth of a contract for the construction of a section of the metropolitan sewer in that part of Boston called West Roxbury.

The Superior Court sustained a demurrer to the amended petition, and ordered judgment for the respondent. The petitioner appealed.

*R. W. Hale,* for the petitioner.

*F. H. Nash,* Assistant Attorney General, for the Commonwealth.

LATHROP, J. This is a petition under the R. L. c. 201, and is in the nature of an action to recover damages for breach of an entire contract for the building of a section of the metropolitan sewer. The petition proceeds upon the theory that the petitioner began work under the contract and was proceeding to do everything required by the contract, when the respondent, by its agents, broke the contract, and the petitioner ceased work, whereupon the respondent repudiated the contract. Four breaches of contract on the part of the respondent are alleged. We shall consider these in their order.

1. The first relates to the order of the engineer in charge of

the work that oak ribs should be used in place of pine ribs, and that the petitioner should cease to work until oak ribs should be substituted. This is the gist of the complaint, although it alleges that the contract provided that all timber work and lumber should be of spruce, and further sets forth that the engineer, in refusing to allow the use of pine, acted unreasonably and without color of reason. We are unable to see how any clause of the contract relating to spruce justifies the use of pine for ribs. Clause 46 of the specifications of the contract provides : " Spruce lumber shall be used in the construction of wooden platforms for the foundation of the sewer, for pile caps, cradling, or other purposes, at such points, and of such description, as the engineer may direct." This has nothing to do with the question before us.

The clauses which apply to the question before us are clauses 5 and 13. Clause 5 is as follows : " All work, during its progress and on its completion shall conform to the lines and levels given by the engineer, and shall be built in accordance with the contract plan and directions given from time to time by him, subject to such modifications and additions as shall be deemed necessary by him during its execution ; and in no case shall any work in excess of the requirements of the plans and specifications be paid for unless ordered in writing by him." Clause 13 is as follows : " The contractor shall furnish, put in place and maintain in the tunnel and shafts such sheeting, bracing, wooden ribs, metallic plates or lagging as may be required to support the sides and roof of the excavation (whether above or below sewer grade), and to prevent any movement which could in any way injure the masonry, diminish the width necessary for proper drainage, or otherwise injure or delay the work; all slides or caves to be at his cost. Where deemed necessary by the engineer, the contractor shall at his own cost, as provided in Article M, item *a*, install and use a metal shield to prevent slides, caves or settlement of the streets. If the engineer is of the opinion that at any point sufficient or proper supports have not been provided, he may order additional supports at the expense of the contractor, and the compliance with such orders shall not relieve or release the contractor from his responsibility for the sufficiency of such supports."

We are of opinion that the engineer had the right to require oak ribs in place of pine ones, and that his judgment was final, unless he acted in bad faith, of which there is no suggestion. We are also of opinion that the petition is not strengthened by the allegation that the engineer acted unreasonably and without color of reason. This is disposed of by the recent case of *Audette* v. *L'Union St. Joseph*, 178 Mass. 113, 115.

2. The next allegation is in substance that the respondent was required by the contract, if an emergency should demand, to make alterations in the plan of the work; that an emergency did arise, namely, that the earth excavation and refilling in the tunnel was by the contract to be done by the use of compressed air to be pumped into the tunnel and to be held in by the surrounding material; that the surrounding material did not, in fact, hold the compressed air, or make, or allow of or make possible the construction of the earth excavation and refilling in the tunnel in the mode provided in the contract; and that an emergency arose which required the respondent to alter the plans, etc.

The only provision of the contract which provides for an excavation under air pressure is clause 11, which reads as follows : " The shafts and tunnel are to be excavated under air pressure when necessary to prevent changes in adjacent ground-water levels. The contractor shall provide hydraulic machinery, air pumps, engines and air locks, and shall make other ample provision (including reasonable duplication of plant) for maintaining the necessary degree of air pressure within the tunnel and shafts and for carrying on the other operations called for by this contract."

There is nothing in the petition to show that when the alleged emergency occurred, the excavation under air pressure was within clause 11. Nor is there anything in the contract which calls for refilling in the tunnel under air pressure.

If these difficulties could be got over, we are still of opinion that the petitioner does not make out a case. The commissioners who signed the contract in behalf of the Commonwealth did not warrant against underground difficulties, but expressly provided to the contrary in clause 4, which reads as follows: " The plots of borings, pipes and other underground objects are

supposed to be approximately correct; but should they be found to be otherwise, or should the contractor encounter quick-sand, springs, demoralized rock or other difficulties, he shall have no claim on that account, it being understood that the commissioners do not warrant the plot of underground objects to be even approximately correct."

It was further provided that certain prices should be paid by the Commonwealth and received by the contractor in full compensation for work and labor, "for all loss or damage arising out of the nature of the work . . . or from any unforeseen obstruction or difficulties which may be encountered in the prosecution of the same; and for all risks of every description connected with the work."

The petitioner relies upon the emergency clause, so called, which begins thus: "It is further agreed that if an emergency demands, or if the engineer deems it desirable, he may make alterations in the line, grade, plan, form, position, dimensions or material of the work herein contemplated, or of any part thereof, either before or after the commencement of construction." The clause then goes on to provide for the method of payment if this is done.

The petitioner contends that the word "may" means "shall," and that it was the duty of the engineer to make alterations. It is true that the word "may" is sometimes construed to mean "shall," but we are of opinion that the emergency clause, so called, was intended for the benefit of the Commonwealth alone, and that the word "may" has its usual meaning.

3. The next breach alleged is that the Commonwealth was required by the contract, once in each week, to make and furnish an approximate estimate of the amount of work done and its value, and to furnish the contractor with an order for the payment of eighty-five per cent of the value estimated as aforesaid; that after the week ending January 6, work was done upon the rock excavation in the tunnel, which was a separate and distinct portion of the contract, and that the Commonwealth did not furnish such estimate or order after the week ending January 6, 1892.

The clause of the contract here invoked is as follows: "The engineer shall, once a week, make an approximate estimate in

writing of the amount of work done and of the relative value thereof, according to the terms of this contract. And said engineer may make such allowance in said weekly estimates as he may deem reasonable on account of the work having been more or less difficult than the average of this contract. And it is expressly understood that said weekly estimates shall only be made when the work progresses in accordance with the provisions of this contract and specifications. Upon each such weekly estimate being made, the board will give an order on the treasurer of the Commonwealth for the payment to said contractor of eighty-five per cent of such estimated value."

The respondent's ground of demurrer is that "the petition does not aver that after said week the said work was progressing in accordance with the provisions of said contract."

We are of opinion that this is a good ground of demurrer. The petitioner was not entitled to an estimate unless the work was progressing in accordance with the contract, and this should have been alleged. *Palmer* v. *Sawyer*, 114 Mass. 1, 13. *Newton Rubber Works* v. *Graham*, 171 Mass. 352. The case last cited also decided that an allegation that "the plaintiff has done and performed all things on its part in said agreement contained to be done and performed, and that it has kept all of the conditions of said agreement" was not enough.

We find nothing in the contract to warrant the assertion that the rock excavation was a separate and distinct portion of the contract. The contract is an indivisible one, which must be performed or broken as a whole. The contention of the petitioner apparently is that if he encountered difficulties in the loose soil, he could go on and excavate in rocky ground, and recover for this. But this is an erroneous view of the law.

4. The remaining breach alleged is that the contract required engineering supervision over the work of the petitioner and inspection thereof, etc., and that such supervision was not furnished. The petition further alleges that on or about January 17, 1902, the Commonwealth by the metropolitan water and sewerage board, which, by the St. of 1901, c. 168, was the successor of the board of metropolitan sewerage commissioners, repudiated the contract. The ground of demurrer is that the petition does not aver that, up to the time of the defendant's

alleged failure to furnish such supervision and inspection, the petitioner had, in the judgment of the engineer, performed, or at the time of such alleged failure the petitioner was ready and willing to perform any work in accordance with the provisions of the contract.

Under the contract the Commonwealth had the right to terminate the contract if the work was not properly done, and everything was to be done "in the manner and according to the plans and specifications and the requirements of the engineer under them." It seems to us, therefore, that the petition should have set forth that the petitioner had performed his part according to the requirements of the engineer, or should have set forth facts excusing him from satisfying such requirements. *Grafton* v. *Eastern Counties Railway*, 8 Exch. 699. *Martinsburg & Potomac Railroad* v. *March*, 114 U. S. 549, 553. *Chicago, Santa Fé & California Railroad* v. *Price*, 138 U. S. 185. *Butler* v. *Tucker*, 24 Wend. 447. *Johnson* v. *Howard*, 20 Minn. 370. *Hudson* v. *McCartney*, 33 Wis. 331. *Williams* v. *Chicago, Santa Fé & California Railway*, 112 Mo. 463.

The principal argument of the petitioner is devoted to a consideration of a clause in the contract making the engineer in certain cases a referee. The petitioner contends that this clause is void as an attempt to oust the courts of their jurisdiction. We have no occasion to consider whether such is its effect or not, as we do not understand that the respondent relies upon it in this case.

The judgment ordered by the Superior Court was rightly ordered, and is

*Affirmed.*