## ROSENBERG v. DEITRICK.
### No. 17 Civil.

District Court, D. Massachusetts.

Nov. 12, 1940.

Jacobs & Jacobs and Solomon Mondlick, both of Boston, Mass., for plaintiff.

Andrew J. Aldridge and Brenton K. Fisk, both of Boston, Mass., for defendant.

FORD, District Judge.

This is a suit to recover the sum of $500 with interest paid by the plaintiff to the receiver-defendant as a deposit on an offer to purchase property at 73–79 Leverett Street, in Boston, Massachusetts.

### Findings of Fact

On August 5, 1937, the plaintiff visited the defendant on the bank premises at Boston and orally offered him $9,200 cash for the property in question. Upon inquiry from the receiver, the plaintiff stated to the receiver that there was no broker concerned in the transaction and no broker's fees would have to be paid. The plaintiff gave the receiver a check for $500 dated August 5, 1937, which was paid, and he received in return a receipt, which reads as follows:

"Boston, August 5, 1937

"Received from Philip Rosenberg $500.00 deposit on offer to purchase property at 73–79 Leverett Street, Boston, for $9,200. cash, subject to approval of the Comptroller of the Currency and Court Orders. Deposit to be returned if offer not accepted.

"Federal National Bank of Boston
"By F. S. Deitrick
"Receiver."

I find that the parties to this suit entered into an oral contract, all the terms and conditions of which appear in this receipt,

702

with an additional oral agreement that the usual adjustments incident to real estate transfers were to be made as of the day of the delivery of the deed.

On August 18, 1937, the receiver received authority from the Comptroller to sell the property and he at once instructed the attorney for the bank to procure the necessary order from the court under the provisions of 12 U.S.C.A. § 192. The order from the court was procured in a decree dated September 20, 1937. The petition and decree of the court authorizing the disposal of the property included a clause to the effect that the taxes, insurance, and other like charges with respect to the property were to be adjusted as of the date of the conveyance.

When the authority to sell was received from the Comptroller, an agent of the receiver notified the plaintiff that an approval of the sale had been had. Nothing was heard from the plaintiff and on October 11, 1937, the receiver wrote the plaintiff asking his reason for the delay in passing papers and pointing to the fact that sometime before the plaintiff had been notified that the requested authority had been obtained from the Comptroller. In this letter he further notified the plaintiff that a court order had been secured.

The plaintiff testified, and I find it to be a fact, that when he first learned that the Comptroller had given the necessary authority, he engaged an attorney by the name of Samuel Weiner to search the title, and the report on the title was furnished him on September 26, 1937. The receiver's letter of October 11, 1937, was referred to Weiner. At about this time the receiver received information that a real estate broker had shown the property to the plaintiff and was claiming a commission. This circumstance caused some delay, during which period the receiver communicated with the Comptroller to secure authority to pay a broker's commission. I find as a fact that the existence of this broker was known to the plaintiff at the time of making his offer to the defendant, and it was because of this misinformation that this short delay occurred. However, the plaintiff agreed to take no advantage because of this delay which was caused by his misinformation. On December 14, 1937, the receiver notified the plaintiff's attorney that authority to pay a commission had been received from the Comptroller and that the receiver was now ready to pass papers. The defendant heard nothing

from the plaintiff and on January 3, 1938, he wrote the plaintiff that if the latter would not communicate his willingness to pass papers on or before January 10, 1938, he would declare the deposit forfeited. Nothing was done by the plaintiff upon receipt of this letter until the summer of 1938 when he instructed his attorney Weiner to bring suit for the return of the deposit of $500. After Weiner received these instructions he wrote the following letter addressed to Frederick S. Deitrick:

"June 21, 1938
"Mr. Frederick S. Deitrick
    "85 Devonshire Street
    "Boston, Massachusetts
            "In re: 73 and 79 Leverett Street
                    "Boston
                    "Massachusetts

"Dear Sir:
"The writer herewith makes claim for the return of the deposit of my client in the above entitled matter, Philip Rosenberg, in the sum of $500.00, which deposit was given you at the time that Mr. Rosenberg made an offer to you on the above property.

"When Mr. Hogan and I got together for the purpose of comparing descriptions and possible adjustments, it became evident from his disclosures that you could not deliver in accordance with what my client believed were the terms of this agreement. While Mr. Hogan has attempted to adjust the same, I advised him that my client would not accept title, except upon the terms and conditions as he outlined at the time of his offer, which Mr. Hogan informed me he could not agree to at that time. It therefore is evident that there never was a meeting of minds in this matter.

"I have on several occasions requested the return of the deposit from Mr. Hogan, and I now make application direct to you for the return of the same.

"Kindly give this matter your immediate attention.
            "Very truly yours,
                    "Samuel Weiner."

There was no evidence in the case that the defendant could not or would not convey the premises in accordance with the terms of the agreement entered into with the plaintiff. The intimation in the letter that there was a disagreement about some possible adjustments is not based on any evidence presented to me. I find as a fact

that at no time was there any disagreement between the parties as to the usual adjustments in real estate transactions. The only evidence from which a reason could be found for the plaintiff not going forward with the purchase of the property was the bald statement of Weiner made to an agent of the bank upon the street that "his client did not want to go through with this deal."

On July 26, 1938, the receiver notified Weiner that the deposit was forfeited. Suit was commenced in the state court September 27, 1938, and removed to this court by the defendant.

I find as a fact from all the evidence that the plaintiff had no valid excuse or reason for not completing his agreement to purchase the property from the bank and that the defendant was at all times ready, able, and willing to convey it to him in accordance with the terms of the agreement set up above. I further find that the defendant waited a reasonable time before notifying the plaintiff that his deposit was forfeited.

The receiver in his answer counterclaimed against the plaintiff, seeking specific performance, on the ground that the letter of June 21, 1938, sent by attorney Weiner to Frederick S. Deitrick, which is set out in full above, constituted a sufficient memorandum in writing to satisfy the provisions of the Massachusetts Statute of Frauds, which provides that a contract for the sale of lands is not actionable unless the agreement, or some memorandum or note thereof, be in writing and signed by the party to be charged therewith or by some person thereunto lawfully authorized, C. 259, Sec. 1, Cl. 4, Massachusetts General Laws (Ter.Ed.). It is obvious that unless this letter satisfied the statute of frauds, the defendant can not prevail as no agreement, nor memorandum, nor any other paper signed by the plaintiff, or his authorized agent, was in existence except Weiner's letter of June 21, 1938.

## Conclusions.

■ Assuming, for the sake of argument, that Weiner had authority to sign a memorandum that would satisfy the statute of frauds, it is fundamental, in order to satisfy the requirements of the statute, that the memorandum must be sufficient as to contents. Giolitto v. Dingolo, 251 Mass. 38, 40, 146 N.E. 226; Sanjean v. Miller et al., 248 Mass. 288, 142 N.E. 799. It was held in the case of Grace v. Denison, 114 Mass. 16, that the memorandum was insufficient when it failed to disclose the portion of the purchase price to remain on mortgage and that to be paid in cash. The court there held that it could not go outside of the writing to ascertain what the real agreement was in this particular. Nickerson v. Weld et al., 204 Mass. 346, 354, 90 N.E. 589, and Freeland et al. v. Ritz, 154 Mass. 257, 28 N.E. 226, 12 L.R.A. 561, 26 Am.St.Rep. 244, stated that unless a reference is made to some other paper or papers from which the essential elements may be gathered, the memorandum itself must express the essential elements of the contract with reasonable certainty. Of course, if no reference is made in the memorandum itself to other papers, but there are in existence other papers signed by the one to be charged, or his agent, if they can be connected with the memorandum by parol evidence, they may be used to help out the memorandum. Nickerson v. Weld, supra, 204 Mass. at page 356, 90 N.E. 589.

■ Thus, the question is whether the letter of Weiner does express all the essential elements of the contract. I cannot find that it does. It is a positive condition of the sale that it is subject to the approval of the Comptroller and orders of the United States Court. This is one of the most essential conditions of the contract in view of the fact that the contract was not completed until these were secured. This essential condition is absent from the letter of June 21, 1938. Further, in this letter, it is not exactly clear whether the plaintiff was buying the property for himself or someone else and it does not appear whether the offer was made for a sale, a lease, or for what purpose. Sanjean v. Miller, supra, 248 Mass. page 289, 142 N.E. 799. The letter is addressed to "Mr. Frederick S. Deitrick", not as receiver or as agent of the bank, but individually. It later says a deposit was made with him. He, personally, did not own the property and no deposit was made to him in his individual capacity. It is apparent that the seller of the property nowhere is disclosed in this letter, nor is the owner described in any way. This is another essential element that is missing. McGovern v. Hern, 153 Mass. 308, 310, 26 N.E. 861, 10 L.R.A. 815, 25 Am.St.Rep. 632. These insufficiencies are enough to justify the conclusion that the letter of June 21, 1938, does not, either by its terms, or by any reference to other papers

704

containing the essential elements, or by connection with any other writings that have been signed by the plaintiff in the case, or his agent, express with reasonable certainty all the conditions and essential elements of the contract entered into by the plaintiff and the receiver on behalf of the bank.

We now come to the contention of the defendant that he was under no compulsion to comply with the local statute of frauds.

■ The administration of the assets of the within insolvent Federal National Bank of Boston is vested in the Comptroller of the Currency. He appoints the receiver and directs his acts. The receiver represents the bank, its stockholders and creditors, but not the government. Case v. Terrell, 11 Wall. 199, 20 L.Ed. 134, 135. He is not clothed with the sovereign powers of the United States. Early v. City of Helena, Ark., et al., 8 Cir., 87 F.2d 831. The receiver disposes of the bank's property in accordance with the provisions of 12 U.S.C.A. § 192. It is true, as the defendant contends, that no state law can control or limit the power or authority of the Comptroller or the receiver in this regard. Questions concerning the exercise of the power and authority to administer the closed bank's affairs are federal questions. Deitrick v. Greaney, 309 U.S. 190, 200, 201, 60 S.Ct. 480, 84 L.Ed. 694; Forrest v. Jack, 294 U.S. 158, 162, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457; Christopher v. Norvell, 201 U.S. 216, 225, 26 S.Ct. 502, 50 L.Ed. 732, 5 Ann.Cas. 740; Rankin v. Barton, 199 U.S. 228, 231, 232, 26 S.Ct. 29, 50 L.Ed. 163; O'Brien v. Western Union Telegraph Co., 1 Cir., 113 F.2d 539, 541. But this does not mean that state laws are inapplicable to the dealings and contracts of a receiver where the state law is in no way repugnant to the federal act, as is the case here. Receivers of national banks are subject to state statutes of limitations. Rankin v. Barton, supra; McClaine v. Rankin, 197 U.S. 154, 158, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500; Redfield Independent School Dist. No. 20 v. Schnetzer, 8 Cir., 94 F.2d 257, 259; Early v. City of Helena, Ark., et al., supra; Nieman v. Soltis, D.C., 24 F.Supp. 1014, 1017. As the court said in the case of Forrest v. Jack, supra, 294 U.S. page 163, 55 S.Ct. page 372, 79 L.Ed. 829, 96 A.L.R. 1457:

"In the absence of federal enactments relating to procedure for enforcement of the liability imposed by section 66, collection is to be made in accordance with state laws * * * at least to the extent that such laws are not inconsistent with the enforcement of the liability imposed by national authority."

■■ When the contract for sale of the property was made in this case by the receiver in accordance with the power given him under the federal statute, the parties to it are regarded as having contracted in contemplation of local law. Federal Reserve Bank of Richmond v. Malloy et al., 264 U.S. 160, 164, 44 S.Ct. 296, 68 L.Ed. 617, 31 A.L.R. 1261; Pritchard v. Norton, 106 U.S. 124, 1 S.Ct. 102, 27 L.Ed. 104. We have in this an entirely different situation from that presented in the case relied upon by the defendant, Union Fish Company v. Erickson, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261, where a contract was made in contemplation of maritime law and, consequently, the local statute of frauds did not apply to it. Here, we are dealing with a contract of a purely commercial character and the parties are held to have made it with the view that it would, like the ordinary commercial contract, be subject to local law. Thus, the contract for sale of the land here is governed in its enforcement by the law of Massachusetts, where it was made. Restatement, Conf. of Laws, Secs. 332, 340. Contracts of national banks are subject to general state laws where the state laws in no wise conflict with the letter or the general objects and purposes of congressional legislation which governs banks. Davis v. Elmira Savings Bank, 161 U.S. 275, 290, 16 S.Ct. 502, 40 L.Ed. 700. Thus a receiver, who represents the bank, should likewise be subject to local laws with respect to his commercial contracts where those laws are not inconsistent with the federal acts under which he is administering the assets of the closed bank.

■ The Massachusetts statute of frauds was applicable here and for failure to comply with it the defendant is precluded from securing specific performance of the contract as contended for in his counterclaim.

■ The plaintiff, however, cannot recover on the main action herein. Where money has been paid upon a parol contract for the sale of land, it can not be recovered if the vendor is willing, as was the case here, to fulfill the contract on his part. Dickinson v. Lee, 106 Mass. 557; Coughlin v. Knowles, 7 Metc., Mass., 57,

61, 39 Am.Dec. 759. He can recover for the money paid, in a suit of this type, only if there is a failure of consideration. There was no such failure here, as the defendant was ready and willing to go through with the bargain and it was the plaintiff's inexcusable conduct that caused it to fall. Further, it was agreed orally, as is evidenced by the words of the receipt set out above, that the deposit was to be returned to the plaintiff only in the event the offer to purchase the land was not accepted by the Comptroller and the court order could not be obtained. These latter events transpired and the offer was accepted by the defendant. Donahue v. Parkman, 161 Mass. 412, 37 N.E. 205, 42 Am.St.Rep. 415. Under these circumstances, the plaintiff can not recover in his suit for the return of the deposit.

The conclusion is that judgment, with costs, is to be entered for the defendant in the plaintiff's suit to recover the deposit of $500, and for the plaintiff, without costs, on the defendant's counterclaim.