### R. S. Blome et al., Appellees, v. Wahl-Henius Institute of Fermentology, Appellant.

### Gen. No. 14,585.

1. PLEADING—*what constitutes duplicity.* To state several causes of action upon different contracts, appearing to be of different dates, in one count of the declaration, is to violate the rule of pleading inhibiting duplicity.

2. PLEADING—*when states legal conclusion.* A pleading alleging a failure to do an act "without any valid reason" states a conclusion of law; either the word "valid" should be omitted or the facts set up which show the absence of a valid reason.

3. PLEADING—*when defects waived.* Defective pleading as distinguished from wholly insufficient pleadings is waived by proceeding to trial upon the merits.

4. CONTRACTS—*when recovery may be predicated upon building contract in the absence of an architect's certificate.* An unreasonable or arbitrary refusal by an architect to issue a certificate is a fraud and such a refusal to issue a certificate being shown, recovery may be had without the architect's certificate upon a building contract which makes the certificate of the architect a condition precedent to payment. If the architect in refusing a certificate has acted honestly and in good faith, a recovery upon such a contract cannot be had.

5. CONTRACTS—*when building contractor liable for failure to perform.* If a contractor promises and undertakes to produce a result or a piece of work up to a certain standard or of a certain quality, knowing that it cannot be done, he, nevertheless, may be held to pay damages for not doing it.

6. FRAUD—*who party to.* One who has not participated in the perpetration of the original fraud becomes a party thereto by insisting upon availing himself of the fruits thereof.

Assumpsit. Appeal from the County Court of Cook county; the Hon. WILLIAM L. POND, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Reversed and judgment here. Opinion filed July 9, 1909.

**Statement by the Court.** Judgment for $502.09 was rendered against the Wahl-Henius Institute of Fermentology, a corporation, defendant, by the County Court of Cook county, in an action of assumpsit, on December 14, 1907. From that judgment the Institute is prosecuting this appeal. A claim of set-off for $647, made by the Institute, was disallowed, and the Institute complains, also, of that disallowance. The case was tried without a jury, and was heard upon an amended declaration consisting of four counts.

It appears from the evidence that defendant erected a three-story and basement building which was specially constructed for an institute of fermentology. The structure consists of a main building and an annex. In the main building are located laboratories and offices and, also, schoolrooms, where examination work is done and investigations are conducted for the

166 . Appellate Courts of Illinois.

Blome v. Wahl-Henius Institute of Fermentology, 150 Ill. App. 164.

United States government, etc. The annex is designed for use as a model brewery. In the construction considerable concrete and cement work was required. The basement floors are all concrete, three halls and the toilet rooms in the main building are concrete and all the brewery floors are concrete.

Plaintiffs were engaged in the business of doing concrete and cement work and their skill and experience in that business are conceded. By written contract between plaintiffs and the Institute, under date of October 8, 1904, plaintiffs undertook and agreed to furnish the material and perform the work for the concrete work in the building, according to certain plans and specifications of Bernard Barthel, the architect of the building. The contract provides, also, that the work should be done under the direction of this architect and his decision as to the true construction and meaning of the drawings and specifications should be final; that plaintiffs should, within twenty-four hours after written notice from the architect, remove all materials condemned by him, whether worked or unworked, and take down all work which he shall, by like notice, condemn as unsound, improper or in any way not in conformity with the drawings or the specifications; that should the contractor at any time refuse or neglect to supply materials of the proper quality or fail in performance of any of his agreements, the refusal, neglect or failure being certified to the owner by the architect, the owner should, after notice to the contractor, be at liberty to make good the default and deduct the cost from the contract price, and that, if the architect should certify that sufficient ground existed, the owner might terminate the contract and complete the work or employ others to do so, and, if the expense exceeded the amount unpaid to the plaintiffs under the contract, then, as stated in the contract: "the contractor shall pay the difference to the owner," and, further, in such case, as stated: "the expense incurred by the owner as herein provided, either for furnishing materials or finishing the work,

and any damage incurred through such default, shall be audited and certified by the architect, whose certificate shall be conclusive upon the parties." The contract also provides that the contract price of $2,150, subject to additions or deductions under the terms of the contract, shall be paid by the owner in current funds, "and only upon certificates of the architect as follows:" eighty-five per cent during the progress of the work and the remaining fifteen per cent within twenty days after completion and acceptance "and all payments shall be due when certificates for the same are issued;" and the contract also states "that no certificate given or payment made under this contract, except the final certificate or final payment, shall be conclusive evidence of the performance of this contract, either wholly or in part, and that no payment shall be construed to be an acceptance of defective work or improper materials."

Plaintiffs began work under the contract in November, and were through some time in December, 1904. After they were through, they came back and relaid two floors, which defendant had claimed were defective. This was done upon their being urged to do so by the architect and, as they claim, upon a promise by him that when they had done so he would issue the certificate for their unpaid claim. When plaintiffs stopped this work, $300 of the contract price remained unpaid, besides $202.09 which they claimed for certain extra items of work done and materials furnished, according to requests made by defendant, at various times. For the aggregate of these two amounts the architect gave plaintiffs no certificate. But he did give defendant a certificate as follows:

"Inasmuch as R. S. Blome Company have refused and neglected to supply properly skilled workmen and have failed to carry out their contract with the Wahl-Henius Institute of Fermentology under the terms of said contract dated October 8, 1904; and said R. S. Blome Company have failed to substantially comply with the terms of said contract: I hereby certify that,

168    APPELLATE COURTS OF ILLINOIS.

Blome v. Wahl-Henius Institute of Fermentology, 150 Ill. App. 164.

on account of said failure on the part of R. S. Blome Company, the Wahl-Henius Institute of Fermentology were obliged to and did provide other labor and material and employ other contractors to finish said work.

"I further hereby certify that I have audited the expense incurred by the said Wahl-Henius Institute of Fermentology for furnishing said material and finishing said work and the damage incurred through such default and failure of said R. S. Blome Company to perform said contract, and I hereby further certify that the expense incurred by the said Wahl-Henius Institute of Fermentology for furnishing material and finishing said work and damage incurred by them, through such default on the part of said R. S. Blome Company, amounts to the sum of Six Hundred and Forty-seven Dollars ($647.00).

Chicago, Ill., February 3rd, 1906.

B. Barthel,
Architect."

In the meantime, however, before this certificate was given, this suit was begun by the filing of a declaration on August 28, 1905.

In their declaration plaintiffs have not averred the issuance to them of any architect's certificate for the amount sued for, although their contract provides that no payments shall be due until such certificates shall have been issued and that the owner shall only be obliged to pay upon architect's certificates. The only explanation or excuse presented by plaintiffs, in their declaration, for the absence of such averment or for not possessing such certificate is an averment that although plaintiffs had fully performed their contracts and agreements "yet the architect, without any *valid* reason or excuse therefor, has failed and does refuse to give to plaintiffs a written certificate to the effect that such payments have become due, in accordance with the terms of the aforesaid contract herein fully set forth."

On June 27, 1906, the parties stipulated that under the plea of general issue filed the defendant might, on

the trial, introduce evidence of counter-claim or set-off, whether existing at time suit was brought or accrued subsequently, the same as if specially pleaded.

WALTER F. HEINEMANN and HENRY L. WALLACE, for appellant.

WILLIAM M. PINDELL and P. H. BISHOP, for appellees.

MR. PRESIDING JUSTICE CHYTRAUS delivered the opinion of the court.

The plaintiffs seek to recover payment in this action, under the contract involved, without a certificate from the architect, the issuance of which their contract specifically provides shall be prerequisite to payment being due. The first and second counts of plaintiffs' declaration are predicated upon the contract and full performance thereof. The third and fourth counts are predicated upon other contracts and performance thereof, involving, respectively, work and material for $66 and $63.84. The declaration contains no other counts. We shall not concern ourselves at all with the third and fourth counts, as, in their briefs in this court, the attorneys for defendant admit and allow the items embraced in those counts.

The declaration does not reflect great credit upon the pleader in respect to the care and skill with which it was prepared. That great writer upon the subject of pleading, Chitty, says: "In actions in form *ex contractu* the pleader may join as many different *counts* as he has causes of action of the same nature in *assumpsit*." 1 Chitty Pl. (10th Am. Ed.) 200. But to state several causes of action upon different contracts, here appearing to be of different dates, in one count, as is done in the first count, is a gross violation of the rule against duplicity. The same writer says: "The object of the science of pleading is the production of a single issue upon the same subject-matter of dispute. The rule relating to duplicity, or doubleness, tends,

more than any other, to the attainment of this object."
*Ib*. 226. The rule precludes plaintiff, he says, from
stating or relying upon more than one matter con-
stituting a sufficient ground of action, referring, of
course, to a statement in or reliance upon one count.
Further, the same writer says: "If the breach *vary*
from the *sense and substance* of the contract, and be
either more limited or larger than the covenant, it
will be insufficient." *Ib* 334-5. In both the first and
the second counts herein, the pleader, in stating the
breach, does vary from the sense and the substance of
the contracts set up. In both these counts the breach
is alleged by an averment that "the defendant refuses
to pay the balance of $502.09," followed by the laying
of plaintiffs' damages at $600. No averment in the
declaration develops any connection between "the bal-
ance of $502.09" and the several contracts set up in
either of these two counts. These counts are also defec-
tive in other respects. If attorneys would pay more
heed to the plain, simple and logical rules of pleading,
the reversals by courts of review would be less, litiga-
tion would be more expeditious and less expensive, and
there would be no ground for complaining of the de-
lays and technicalities of legal procedure. As in this
particular case there has been a trial upon the merits,
we regard all causes of objection to the defects in the
counts herein as waived.

Plaintiffs allege, in the first and second counts, that
they have fully performed their contract and "yet the
architect, without any *valid* reason or excuse therefor,
has failed and does refuse to give the plaintiffs a writ-
ten certificate." This averment, owing to the use of
the word "valid," is not well pleaded. Either the
word "valid" should have been omitted or else the
facts, relied upon as reason or excuse, should have
been stated, in order that the court, upon demurrer
interposed, might have determined upon the validity
or that an issue might have been taken upon the facts.
As it is, the averment asserts nothing more than that

for some unstated reason or excuse, which the pleader asserts to be "valid" and as to which the court and the opposite party must rely upon the pleader's conclusion in that regard, the architect has failed and refused to give a certificate. The averment only states a pleader's conclusion, which is not good pleading. However, this suit has been conducted as if the averment were, that, without any reason or excuse existing, or being given, for his action, the architect has arbitrarily failed and refused to give a certificate. Such arbitrary non-action is, in law, equivalent to a decision, or exercise of judgment, against a party, without any ground or warrant of fact therefor. Such arbitrary conduct by one entrusted with a power of decision, to be exercised upon a point or proposition in controversy between the parties who have delegated the power to him, is a fraud in fact and in law. A provision, such as here involved, in a building contract, inserted in anticipation of the possibility of some controversy arising, is a provision for a form of arbitration between the parties. An arbitration, when not statutory or under a rule of court, which forms of arbitration are provided for in some jurisdictions, is a form of settlement *in pais,* agreed upon to avoid the invocation, by either party, of judicial action, i. e., a resort to courts. It may be true that arbitrations are often followed, as a consequence, by the misfortune of a resort to judicial action and an invocation of the judicial power, but even then the inherent nature of an arbitration *in pais* proceeding itself is not changed into a judicial proceeding. The case of Perry v. Insurance Co., 137 N. C. 402, is in point on the contention of plaintiffs, that if the architect, without the existence of any reason or excuse whatever, or warrant of fact, therefor, arbitrarily decided against plaintiffs upon questions in dispute, then, such action was a fraud. Perry v. Insurance Co. was a proceeding for the recovery of a fire loss, upon a policy of insurance, and to set aside an award of arbitrators, because of

fraud, corruption, bias and undue influence. In that case the court held: "There are two kinds of fraud which will vitiate an award: positive, as by some act that can be proven; or inferential, where the circumstances so strongly point to dishonesty that the court will consider the fact of its existence to be clearly indicated." The court, in that case, as to what will establish fraud, quotes approvingly the language of Lord Thurlow, viz: "An inequality so strong, gross and manifest that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it," and also quotes from Goddard v. King, 40 Minn. 164, also with approval, as follows: "Where there is a charge of fraud or partiality made against an award, the fact that it is plainly and palpably wrong would be evidence in support of the charge, entitled to greater or less weight according to the extent or effect of the error and the other circumstances of the case. There might be a case of error in an award so plain and gross that a court and jury could arrive only at the conclusion that it was not the result of an impartial exercise of their judgment by the arbitrators." In the case of Fallbrook Irrigation District v. Bradley, 164 U. S. 112, we find this question of what may be sufficient to show fraud, in a similar connection, considered. Counsel engaged in that case were among the most eminent in this country. In that case, speaking of a board of supervisors in an irrigation district, established by a state statute as a tribunal invested with power to determine the fact of benefits to lands, the court first (p. 169) quotes as follows: "Like every other tribunal established by the legislature for such purpose, their duties are judicial in their nature, and they are bound in morals and in law to exercise an honest judgment as to all matters submitted for their official determination," and later (pp. 169-170) the court says: "Very possibly a decision by the statutory tribunal, which included tracts of land within the district that plainly

could not by any fair or proper view of the facts be benefited by irrigation, would be the subject of review in some form and of a reversal by the courts; on the ground that the decision was based not alone upon no evidence in its favor, but that it was actually opposed to all the evidence and to the plain and uncontradicted facts of common knowledge, and was given in bad faith. *In such case the decision would not have been the result of fair or honest, although grossly mistaken, judgment, but would be one based upon bad faith and fraud,* and so could not be conclusive in the nature of things." In harmony with this line of reasoning, that an act or conduct unreasonable in a high degree proves fraud, we find the following statement by our own Su-preme Court: "The agreement to sell and transfer stock, to the amount of twenty thousand dollars for two dollars, is a fraud *per se.*" Macoupin County v. People, 58 Ill. 191, 195. Thus, it appears, upon au-thority, that when one invested by parties with power of decision upon a matter in difference between them, involving the disposition of property or property rights, fails to honestly and in good faith exercise his judgment upon the dispute, but abitrarily or capri-ciously disposes of what may be involved without ex-ercise of his judgment, a fraud is perpetrated upon the injured party. Indeed, he also, by his arbitrary act, exceeds the power delegated to him, for he was given power to dispose of property by the exercise of his judgment, not, by the exercise of his arbitrary will, to pass the property of the one to the other. If, in plain negligence, defiance or disregard of the fact of full performance, as alleged, by plaintiffs, the archi-tect arbitrarily failed or refused to issue to them a certificate, such action would be dishonest and fraudu-lent. Defendant would not be permitted to avail itself of the benefit of such fraud, for the rule which was applied in Wierich v. De Zoya, 7 Ill. (2 Gilm.) 385, to De Zoya, who wanted to avail himself of the benefit of fraud, would then be applied to defendant. It was in

174     APPELLATE COURTS OF ILLINOIS.

Blome v. Wahl-Henius Institute of Fermentology, 150 Ill. App. 164.

that case held as to De Zoya (p. 388): "If he did not participate in the original fraud, by insisting upon its fruits he became a party to it."

If the plaintiffs' allegation that no reason or excuse existed for the architect's failure to issue a certificate were established by the evidence in this record or were it shown that his reason or excuse was so utterly unfounded in fact and so flimsy that all reasonable men would agree that it was but a pretext, then fraud would be established, under the authorities above cited. But, does the evidence disclose that the architect acted without reason or excuse, that is, arbitrarily, in failing or refusing to issue a certificate to plaintiffs?

Beginning in the month of February, 1905, and continually thereafter, at least until this suit was begun, it appears that the defendant was complaining, either to the architect or to the plaintiffs, of the character of the work done under the contract in question. From the evidence it appears that in some instances cinder concrete, of the thickness of some inches, with one-inch cement finish on top, was specified. This required a full inch of proper cement finish in every part of the surface covered by such specification. In many places, as is shown, the cement finish was but 1/8, 3/8, 9/16, 7/8 or 15/16 of an inch in thickness, that is, the "top coat" varied in thickness. This was a material noncompliance with the contract. If defendant had considered less than one inch of uniform thickness sufficient, it would not have contracted for and obligated itself to pay for a "top coat," or cement finish, of a uniform thickness of one inch. Plaintiffs do not even attempt to justify this furnishing of a less thickness than they contracted to furnish. The cinder concrete was shown to be "soft," "crumbling," "loose stuff," "porous," "fine dust," and "so that it could easily be broken with the hand" or fingers. One witness said: "when it is cut through it pours just like meal," and another: "I found that the 'concrete' underneath the

top surface did not appear to be concrete at all, but cinders.'' It was also shown that the top surface did not ''bind'' properly to the rough concrete underneath it. In some places the top finish and the rough concrete adhered and in other places it did not. In some places the concrete floors ''buckled.'' The floors were also shown to have cracks, other than beam cracks, and cracks radiating from these. Beam cracks and radiating cracks were, perhaps, shown to be the consequence of an absence of joints which should have been provided for in the specifications. One witness said he made ''soundings'' in different places upon floors and found, in spots, hollowness underneath, showing a lack of adherence between the top-finish and the rough concrete. The plaintiffs offered no evidence to contradict these witnesses in these respects. Experts testified that the main body of the cinder concrete, or rough concrete, should be hard and compact and there should be a good ''bond'' between that and the top-finish, so that both would be hard and tense; that the upper surface should adhere, if the concrete were good and if the top-finish were properly put on while the concrete was green; that by the mixture of the particles of cinders and the particles of sand, if these were properly mixed with cement so that the cement would envelop the particles of these materials, and if there were a proper application of the top-finish and proper tamping, the whole, that is, the top-finish and the rough concrete, would form a monolithic mass throughout.

The specifications require the floors ''in basement and brew house (the annex) to have proper slope toward bell-traps'' in the floors, in order that water shall naturally flow off the floors into the sewer. The evidence in the case, without conflict, shows that the floors in several rooms were so sloped that, in many instances, water would flow in all directions except toward and into the bell-traps. The ''fillets'' required by the contract were omitted and in other respects the evidence shows non-compliance and improper compliance with the contract.

Apparently the supervision of the doing of this work was lax. Indeed, the defects in the floors are so clearly shown by the evidence that counsel for appellees, mindful of the obligation of the members of our honorable profession to the court, are obliged to make various concessions in that respect in their brief. In one place they say: "That these floors were a failure does not admit of doubt," in another: "Certain it is that the floor was, in some respects, a failure." It is to be noted also that appellees do not argue for recovery on the ground of performance of their promises and undertakings, but on the ground of substantial performance. In this respect they depart from their pleadings. The excuses advanced by appellees for the lack of full compliance with the terms of their contract are that the use of cinder concrete was ill-advised and was inherently improper, and that they did the best that could be done with such material; and, further, that the cracks complained of arose by reason of no provision being made for joints in the concrete floors and by reason of settlements of the walls. We find no evidence of any settlement of any walls. We cannot assume, merely from the existence of the cracks in the floors, that there were any such settlements.

We come then to the defense of impossibility of producing the result contracted to be produced, owing to the inherent nature of the material specified. According to Mr. Blome's testimony, plaintiffs knew and understood, when they entered into the contract, what might or would follow if cinders were used in making the concrete. They claim, also, that Barthel and defendant did not know. If this view be accepted, plaintiffs intentionally entered into a contract, which they knew they could not perform, to lay floors, by the use of cinder concrete, of a certain fixed standard and satisfactory to the architect Barthel. Their defense of impossibility of compliance with their contract is not only unconscionable, but we find it not to be sustained

by the evidence. To contract to do work up to a certain standard is, in effect, under the circumstances here involved, a representation that it can be done. The evidence shows the work could be done according to the fixed standard, for, in places, the concrete floors were up to the standard. Furthermore, it is the law that if a contractor promises and undertakes to produce a result or a piece of work up to a certain standard or of a certain quality, knowing that it cannot be done, he, nevertheless, may be held to pay damages for not doing it. This is said to be "not, in fact, for not doing what cannot be done, but for undertaking and promising to do it." 2 Pars. Cont. (6th Ed.) 673.

We are not convinced by the evidence in this record that, upon a state of facts so plain that reasonable minds could not differ, the architect, as an arbitrator, inconsistently with such state of facts, failed and refused to issue to plaintiffs a certificate of payment due. Consequently, the plaintiffs have failed to show that the architect, in his failure and refusal to issue to plaintiffs a certificate, acted in fraud of their rights or arbitrarily. On the contrary, having considered the evidence very carefully, we have come to the conclusion that not only was the architect justified in refusing to issue a certificate to plaintiffs, but had he issued one, he would have been grossly derelict in his duty to defendant. It was only necessary, however, that upon examination of the record it should appear that the architect honestly and in good faith exercised his judgment and acted thereupon. It was not necessary that it should appear, in order to sustain the architect, that, in exercising his judgment upon propositions or differences involved, he arrived at a correct conclusion. For, even though an arbitrator in good faith decides incorrectly, the parties who made him such are bound by his decision, when within the power delegated to him. Architects' decisions are no exceptions to this rule. The law of this state with reference to the conclusiveness of architects' certifi-

cates is well settled. Gilmore v. Courtney, 158 Ill. 432; McAuley v. Carter, 22 Ill. 53; Canal Trustees v. Lynch, 5 Gilm. 521; Coey v. Lehman, 79 Ill. 173; Fowler v. Deakman, 84 Ill. 130; Arnold v. Bournique, 144 Ill. 132; City of Lake View v. MacRitchie, 134 Ill. 203; Barbee v. Findlay, 221 Ill. 251; Stose v. Heissler, 120 Ill. 433. In the Gilmore v. Courtney case our Supreme Court said: "To prove that the [architect's] estimate is fraudulent, it is not sufficient merely to show that work was rejected or condemned, which in the opinion of others should not have been rejected or condemned. This may, indeed, be proved as a circumstance tending, in some degree, to establish fraud, but it is not conclusive. The evidence must show that the engineer knowingly and wilfully disregarded his duty, and rejected or condemned work which he knew, or at least should have known, fully conformed, in all respects, to the terms of the contract."

That the amount of $647 is a fair and reasonable charge for the work done and material furnished because of the default of plaintiffs is not controverted; besides, the architect certified to the correctness of that amount. For the outlay of this amount defendant is entitled to recover under its claim of set-off. Defendant, for the purpose of an adjustment of the accounts herein, admits the claims of plaintiffs herein, as follows: Balance due upon contract $300; excavating and filling trench $40; laying extension on first floor $8; concrete foundation $66 and asphalt finish in wash-tub room $63.84, aggregating $477.84. Deducting this amount from defendant's set-off of $647 leaves $169.16 due the defendant from the plaintiffs.

The judgment of the County Court will be reversed and judgment will be entered here in favor of the defendant and against the plaintiffs for $169.16.

*Reversed and judgment here.*

MR. JUSTICE MACK took no part in the consideration of this case.