(No. 4523-

W. A. MELCHIOR, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed December 18, 1953.*
*Order filed March 25, 1955.*

KORSHAK AND ROTHMAN, AND DRACH AND HOWARTH, Attorneys for Claimant.

LATHAM CASTLE, Attorney General; C. ARTHUR NEBEL, Assistant Attorney General, for Respondent.

WHAM, J.

In this case W. A. Melchior, claimant, contends that he is entitled to payment by respondent of the remaining sum due under a construction contract in the amount of $3,493.65, which respondent has failed and refused to pay. Claimant also contends that he is entitled to re-

cover an additional sum of $1,062.20 for repairs made by him to equipment installed under the contract.

Respondent, having filed no answer to the complaint, is, under Rule 11 of the Court of Claims of the State of Illinois, presumed to have filed a general traverse, or denial of the facts set forth in the complaint, and, by virtue of such presumption, respondent denies that claimant is entitled to the recovery prayed for.

The contract involved herein was entered into by claimant and respondent on August 17, 1949. The terms of the contract provide that claimant shall furnish all labor and materials to fully complete installation of the coal handling equipment for the power plant and associated utilities at the Lincoln State School and Colony, Lincoln, Illinois, in accordance with plans and specifications set forth at length in the contract, and detailed drawings furnished by claimant and approved by respondent. The respondent agrees to pay claimant the sum of $19,891.00 for the installation of said system. The contract provides that respondent shall make payments on account to contractor on his obtaining a certificate of payment from the Supervising Architect upon furnishing proof of the amounts due for services, labor, materials, etc., from time to time due, provided, however, that the amount of the payments previous to the substantial completion of the entire work shall not exceed 85% of the value of such material and labor as estimated by the Supervising Architect, the final payment to be made within thirty days after completion in the manner, form and time required by the contract.

The contract specifically provides that:

"No payment whatever, or at any time, shall be demanded or due, except upon written certificate of the said Supervising Architect, to the effect that

such payments have become due, and such certificates shall in each instance be a condition precedent to the right to require payment, and whose decision thereon shall be final."

Article 8 of the General Conditions of the Contract provides that the Supervising Architect shall have general supervision and direction of the work. Article 9 provides that he shall make decisions on all claims of owner, or contractor, within a reasonable time.

Article 25 provides that the Supervising Architect shall issue the certificate of payment upon application by contractor when the payment falls due "or such amount as he (the Supervising Architect) decides to be properly due". Article 28 provides that the Supervising Architect may withhold any certificate of payment to protect owner from loss on account of defective work not remedied until such work is remedied.

Article 15 provides the contractor shall remedy any defects due to faulty workmanship, or faulty materials, upon written notice, and paragraph 1018 of the specifications provides that he shall correct at his expense any defects of manufacture, or installation, which developed within twelve months from the date of final acceptance by the Supervising Architect.

Article 14 provides that, if the Supervising Architect and owner deem it inexpedient to correct work not done in accordance with the contract, the difference in value, together with a fair allowance for damages, shall be deducted. Article 35 provides that, if the contractor shall neglect to prosecute the work properly, or fail to perform any provision of the contract, the owner may, after three days written notice to the contractor, without prejudicing any other remedy owner may have, make good the deficiencies, and deduct the cost from the payment due contractor, "provided, however, that the Su-

pervising Architect shall approve both such action and the amount charged to contractor.''

Paragraph 2055 of the Specifications provides that the contractor shall ''run all equipment as in actual service, and demonstrate that it will perform all functions as specified'', this test to be run in the presence of a representative of the Supervising Architect. It further provides that the contractor shall instruct the operator regarding the operation and care of the equipment.

Article 36 provides that, if the contractor persistently disregards the instructions of the Supervising Architect, or otherwise is guilty of a substantial violation of any provision of the contract, the owner, upon the certificate of the Supervisng Architect that sufficient cause exists to justify such action, may without prejudice to any other right or remedy, and after giving the contractor seven days written notice, terminate the employment of the contractor, and take possession of the premises, and of all materials, tools and appliances thereon, and finish the work by whatever method he may deem expedient. In such case, the contractor shall not be entitled to receive any further payment until the work is finished. If the unpaid balance of the contract price exceeds the expense of finishing the work, such excess shall be paid to the contractor. If such expense shall exceed such unpaid balance, the contractor shall pay the difference to the owner. The expense incurred by the owner as herein provided, and the damage incurred through the contractor's default, shall be certified by the Supervising Architect.

These provisions pertaining to action by the Supervising Architect are not uncommon in construction contracts. They appear in many contracts, both where a governmental body is a party, and where private parties

are involved. In *Williston on Contracts,* Section 794, Vol. 3, page 2235, it is stated:

"Almost all contracts for building or engineering work of any importance provide that payment shall be made only when a certificate has been obtained from a supervising architect or engineer that the work has been performed as required by the specifications in the contract."

And on page 2237:

"Not infrequently, however, the contract requires the certificate of the owner's engineer or makes his decision final as to disputed matters connected with the proper performance of the contract, and such provisions are generally upheld."

The purpose of these provisions is clear. In such projects, as is involved herein, the activities are of a technical and specialized nature. The knowledge of someone technically qualified to pass upon the performance of the contractor must be utilized, so as to arrive at, as near as possible, a compliance by both contractor and owner.

These provisions are far more than mere formalities to be complied with. When the parties to a contract agree to such, the power and discretion placed in the hands of the Supervising Architect is extensive, and the exercise thereof by the Supervising Architect is not to be easily overruled, or impeached. His decision is final in the absence of either fraud, gross mistake, unreasonable and arbitrary action, or a showing that he has knowingly and wilfully disregarded his duty, and rejected or condemned work, which he knew, or at least should have known, fully conformed in all respects to the terms of the contract. It is not sufficient to merely show that he arrived at a conclusion, which, in the opinion of others, was incorrect. The parties to the contract are bound by his decisions made in good faith when within the power delegated to him. *Brownell*

*Implement Company* vs. *Critchfield,* 197 Ill. 61 at p. 70; *Blome* vs. *Wahl-Henius Institute of Fermentology,* 150 Ill. App. 164 at pp. 177 and 178; *Gilmore* vs. *Courtney,* 158 Ill. 432 at pp. 437-439; *Martinsburg & Potomac Railroad Company* vs. *March,* 114 U. S. 549, 29 U. S. Supreme Court Reports 255; *United States* vs. *Moorman,* 338 U. S. 457, 94 Law Ed. 256 at p. 259; 110 A.L.R. 137 at pp. 138-140; *Williston on Contracts,* Section 797, Vol. 3, p. 2242.

In this case, it is the Supervising Architect, a code officer of the State of Illinois, and, as such, a representative of all the people of the state, who owes a duty to use his best judgment in such matters as are submitted to him under the terms of the contract, both from the standpoint of the State of Illinos and the contractor. The parties hereto expressly agreed to this procedure.

It appears from the face of the complaint that claimant presented an application for certificate of payment to respondent for the balance due under the terms of the contract in the amount of $3,493.65, but that the Supervising Architect failed, and refused to make and authorize the payment. The complaint further alleges that claimant furnished all of the labor, material and equipment for the complete furnishing and installation of the coal handling equipment, and fully completed the work in accordance with the terms and provisions of the contract. He does not plead either a waiver, or an excuse, for the necessity of obtaining the certificate of the Supervising Architect, which is, by the terms of the contract, a condition precedent to the recovery of any amount due. He does plead, however, that the work was accepted by respondent.

The law is clear that claimant, in order to recover on the contract, must both plead and prove a compliance

on his part with all of the terms of the contract, including the performance of all conditions precedent. The burden of proof is upon claimant. Paragraph 674, *Williston on Contracts*, Vol. 3 at page 1936, states:

> "It is always the duty of the plaintiff in his declaration or complaint to allege facts sufficient to make out a prima facie cause of action."

In *Noyes* vs. *Gold*, 310 Ill. App. at page 6, the court held:

> "The general rule that the burden of proof rests on the party having the affirmative of the issue is applicable to actions on contracts and the usual test employed to determine on which side the burden of proof lies is to ascertain which party would be entitled to a verdict if no evidence was offered on either side of the issue."

The complaint must allege facts showing a fulfillment of the condition precedent, or some excuse for non-performance of the condition. In *Feder* vs. *Midland Casualty Company*, 316 Ill. 552, the court at page 559 recognizes this principle of pleading, and the reasons therefor, and states:

> "The object of a declaration in an action at law is to state the facts constituting the plaintiff's cause of action upon which he relies to recover, so as to enable the defendant to prepare his defense and meet the facts alleged with appropriate evidence. In order to recover, the plaintiff must prove the case alleged in his declaration. It is a primary and elementary principle that a plaintiff can recover only on the case made in his declaration. He cannot make one case by his allegations and recover on a different case made by the proof. (*Moss* vs. *Johnson*, 22 Ill. 633; *Nenifee* vs. *Higgins*, 57 id. 50; *Wabash Western Railway Co.* vs. *Friedman*, 146 id. 583.) The defendant has a right to know what the plaintiff charges against him in order to properly make his defense and to prevent his being taken by surprise by the evidence at the trial. (*Wabash Railroad Co.* vs. *Billings*, 212 Ill. 37.) It is a familiar principle of pleading that when the consideration of the defendant's contract is executory, or its performance is to depend on some acts to be done or forebome by the plaintiff, or on some other event, the plaintiff must aver the fulfillment of the condition or show excuse for the non-performance. *I Chitty on Pleading*, 320; *People* vs. *Glann*, 70 Ill. 232."

This same principle of pleading is recognized in contract cases such as the one at bar, wherein, as a

condition precedent to recovery, a certificate of the Supervising Architect must be procured prior to final payment. The burden of pleading, and proving that such certificate was issued, is upon claimant, or, if it was not issued, a waiver of said condition or facts setting forth a good and sufficient excuse for not procuring same must be averred. In *Michaelis* vs. *Wolf*, 136 Ill. 68, the Supreme Court said at page 71:

"Where, in a building contract, provision is made for the payment of the price, or a portion or portions of such price, upon the certificate or certificates of the architect in charge of the construction of the building, the obtaining or presentation of such certificate or certificates is a condition precedent to the right to require payment, and such condition must be strictly complied with, or else a good and sufficient excuse shown for not complying therewith. Such compliance with the condition precedent, or excuse for non-compliance, must be averred in the pleadings and establishment by the evidence."

In *Errant* vs. *Columbia Western Mills*, 195 Ill. App. 14, the court held in an abstract decision at page 16:

"Where a contractor's right to recover a balance due on a building contract depended upon obtaining an architect's certificate showing the amount due, the obtaining of such certificate was a condition precedent to any right of action, which condition was to be strictly complied with, or good and sufficient excuse shown for non-compliance."

In *Hart* vs. *Carsley Manufacturing Co.*, 221 Ill. 444, the court said at page 446:

"The true rule is this: 'though an excuse for not performing a condition is for some purpose equivalent to performance, yet it is not the same thing, and therefore in pleading, performance must never be averred by a party who relies upon an excuse for not performing, but he must state his excuse.' *Coke on Littleton*, 304; *Langdell on Contracts*, sec. 175; I *Chitty's Pl.* (14th Am. ed.) 340; *Coult* vs. *Miller*, 10 Cush, 49; *Palmer* vs. *Sawyer*, 114 Mass. 1; *Speake* vs. *Shepard*, 6 Har. and John, 81; *Michaelis* vs. *Wolf*, 136 Ill. 68; *Parmly* vs. *Farrar*, 169 id. 606; *City of Peoria* vs. *Fruin-Bambrick Construction Co.*, id. 36."

The Supreme Court in the case of *City of Peoria* vs. *Fruin-Bambrick Construction Co.*, 169 Ill. 36, said at page 39:

"We think there is abundant authority for the rule that, when work is done under a contract, as was the case here, the plaintiff can only recover therefor when he has fully or substantially performed the conditions precedent to his right of recovery as stated in the contract, or also averred and proved a sufficient excuse for his non-compliance with its conditions. (*Michaelis* vs. *Wolf*, 136 Ill. 68; *Barney* vs. *Giles*, 120 id. 154.)"

See also the cases of *Brownell Implement Company* vs. *Critchfield*, 197 Ill. 61 at pp. 70-71; *Victory Cabinet Company* vs. *Insurance Company*, 183 F. 2(d) 360 at p. 364; *Martinsburg & Potomac Railroad Company* vs. *March*, 114 U. S. 549, 29 U. S. Supreme Court Reports 255; and *United States* vs. *Moorman*, 338 U. S. 457, 94 Law Ed. 256 at 259, which cases recognize the above stated rule of law.

The only possible grounds appearing in the complaint in this case upon which claimant might reasonably be held to allege an excuse for the non-fulfillment of the condition precedent is the allegation charging acceptance of the work. We do not hold, as a matter of law, that under this contract such acceptance would or would not be a waiver of such a condition precedent, or an excuse for the non-procurance of the architect's certificate, but, even if it is the law that such would constitute a waiver or excuse, the respondent has denied that the work was accepted. Upon this issue, we have considered the evidence in an attempt to ascertain whether claimant has borne the burden of proving such an acceptance, and find that he has not.

The facts concerning this particular question are these:

In December of 1950 the fuel conveying equipment was installed, but could not go into operation at that time as electric power was not then available. In June of 1951, after the electric power had been provided, a test of the equipment was run by claimant's agent, Mr.

Theodore Stoffregen, in the presence of Mr. VanValkenberg, Superintendent of Construction for the State of Illinois. This test consisted of operating said coal conveying system for a period of approximately twenty minutes according to testimony offered on behalf of claimant; the system operated satisfactorily for that period of time, and Mr. Stoffregen requested Mr. VanValkenberg to sign an acceptance of said equipment, which he did not do. Mr. VanValkenberg testified that he informed Mr. Stoffregen that he would not accept the work at that time, since it had not been painted. Mr. VanValkenberg further testified that the "dry run" at that time was not in accordance with the specifications required by the state, and that "we requested a later dry run".

In the month of September, 1951, respondent's agent requested claimant to send a man to check the installation before putting it into daily operation. This was after claimant had made application for a certificate of final payment in August. Claimant, in accordance with the request, sent Mr. Charles P. Reid, a superintendent and millright foreman, to check the equipment. He spent several days at the Lincoln State School, and a controversy has since developed between claimant and respondent as to whether or not certain damages to the equipment was the result of negligence of an agent of respondent. This, however, is not material in regard to the question of acceptance, and we will not extend this opinion by a discussion of that point at this time.

After the equipment was repaired, and a test run made, Mr. Reid had a conversation with Mr. VanValkenberg on October 9, 1951—no one else being present. Mr. Reid states that Mr. VanValkenberg promised to sign an acceptance of the job, but that he did not do so, and

Mr. Reid left without the signed acceptance, or, as he describes it, the "release". Mr. VanValkenberg testified that he never signed the acceptance, although he told Mr. Reid that he might accept it, if it would work. He further testified that he would have to see it in operation for a longer period of time than the test run on October 9. He then testified that the equipment shortly thereafter broke down again.

There is voluminous correspondence in evidence between the Supervising Architect's office and claimant concerning the condition of this equipment between October 9, 1951, and the time of filing of suit. At no time did the Supervising Architect, or any agent of the state, sign an acceptance of the work, or verbally state an acceptance. On the contrary, respondent specifically refused to accept it. Respondent's contention, as expressed by various letters from the Division of Architecture and Engineering, was to the effect that the coal handling system was still unsatisfactory after several attempts on the part of respondent to adjust it, and that several buckets on the elevator kept tearing loose, and demanded that claimant take the necessary steps to place the system in satisfactory operating condition acceptable to the state. Claimant contended by his letter of January 9, 1952, in reply to this demand, that respondent's manner of operating the system was to blame, rather than the construction thereof, and stated that he would do no further work on the system until final payment was made. This was then, and is now, the basic disagreement between the parties. It is apparent from the testimony that claimant has not proved an acceptance on the part of the respondent.

The mere fact that the equipment was, and is being used by respondent, does not constitute an acceptance

by reason of Article 25 of the Specifications, a part of the contract, which states in part that: "No certificate issued nor payment made to the contractor nor partial or entire use or occupancy of the work by the owner shall be an acceptance of any work or materials not in accordance with this contract." Regardless of which party is right or wrong concerning the reason for the defective operation of the equipment, it appears to us from the evidence there was no intention upon the part of respondent to accept the work, and same has not been accepted.

No other waiver, or excuse for the necessity of obtaining the architect's certificate, if such waiver or excuse exists, has been pleaded by claimant, who has the burden to do so. He can rely only upon the grounds of waiver or excuse, if any, which he has pleaded. In *Feder* vs. *Midland Casualty Company*, supra, the court at page 559 said:

"In order to recover the plaintiff must prove the case alleged in his declaration. It is a primary and elementary principle that a plaintiff can recover only on the case made in his declaration. He cannot make one case by his allegations and recover on a different case made by the proof."

Inasmuch as claimant admits by his pleadings that no certificate was procured from the Supervising Architect, and, since he has failed to prove an acceptance of said fuel conveying system under the terms of the contract, we are compelled to hold that claimant, under the issues of this case as it now stands, is not entitled to recover at this time.

If there exists no waiver of the condition precedent requiring procurance of the architect's certificate, or an excuse for the failure of obtaining the certificate, then such suit is premature, and both parties must look to the contract for further directions.

If, however, claimant relies upon such a waiver, or excuse, then he has not asserted it by his pleadings, or otherwise made his contention known. He has filed no brief and argument, and this Court does not intend to speculate upon what, if any, grounds of waiver or excuse claimant might rely. To do so would require that we become advocates for both parties at the same time, which is foreign to the exercise of the judicial process.

In view of the above, it is impossible for this Court to render a decision upon the merits of this case at the present time. We do not, however, intend to forever preclude either party, and, in order to protect the rights of both claimant and respondent, so that a final decision upon the merits may eventually be had, we are denying the claim at this time for the reasons stated herein, and with the express understanding that such denial shall not operate as a bar to any further appropriate action in this case, nor will it bar the filing of other actions by either party. It is further our express holding that this decision and order is not a final determination against either claimant or respondent under Section 17 of the Court of Claims Law.

In the exercise of the inherent power of this Court to give effect to its orders, we specifically provide, but not by way of limitation, that claimant may file amended, additional or supplemental pleadings in this action within sixty days from the filing of this opinion, without the necessity of obtaining further leave; that respondent may thereupon file appropriate pleadings within thirty days after the filing of such amended, additional or supplemental pleadings; that this case shall be reassigned to a commissioner for the taking of further evidence upon the request of either party, if such request be made to this Court within the next succeeding session of the

Court after the case is at issue upon the amended, additional or supplemental pleadings. It is the further order of this Court that there shall be no waiver of brief and argument by either party hereto, and that Rule 19 of the Rules of the Court of Claims, as amended on November 10, 1953, shall be complied with by both parties in any future action taken by either in this case.

#### Order

This cause coming on for hearing before the Court on this 25th day of March, 1955, upon the Court's own motion to dismiss for want of prosecution;

And it appearing to the Court that no additional or supplemental pleadings have been filed by claimant by virtue of authority granted by the Court in its opinion filed December 18, 1953, and numerous extensions of time thereafter granted;

It Is, Therefore, Ordered and Adjudged that this cause be and the same is hereby dismissed for want of prosecution, subject, however, to so much of the reservation contained in the original opinion, namely, that claimant is not to be precluded from filing a claim in respect to the matter involved herein if and when a cause of action accrues under the law as announced in said opinion.