## JOSEPH B. JOHNSON *vs.* TRINITY CHURCH SOCIETY.

One who has been ready and offered to perform services according to the terms of a special contract may, if prevented by the adverse party from performing them, recover the amount due to him, under a declaration upon an account annexed.

The secretary of a religious society wrote to a minister informing him that the society had voted on the 1st of January to offer to employ him for one year from that date, for a sum in gross. He accepted the offer, stipulating however that the year should begin on the 1st of February, and the payments be made quarterly from that date. In December following the society passed a vote, which was duly entered on their records and attested by their secretary, reciting that on the 1st of October they "were not indebted to him in the least, and would not become so indebted to him by the terms of the agreement until November following." *Held,* that there was a sufficient memorandum, within the statute of frauds, of a contract extending to the 1st of February.

Evidence of declarations of a committee of a religious society appointed to offer terms to a minister are incompetent evidence to prove the contract of the society, unless they were authorized by the society to make those declarations.

Evidence that a religious society voted "that for the six intervening Sabbaths from December 14th to February 1st the society will supply the pulpit, making their own selections and paying therefor whatever sum is just and proper, and the residue to" their minister at a certain rate per annum, and "that the committee be instructed to require an immediate answer to the foregoing proposition as a compromise," is incompetent for the purpose of proving that the contract for his services was to extend till February 1st.

A minister cannot be allowed to prove his contract with a religious society by reading extracts from a sermon preached by him in their church, to the terms of which no open contradiction was made.

CONTRACT brought against a religious society in Neponset to recover, under a declaration on an account annexed, the sum of three hundred dollars for the salary of the plaintiff as a clergyman from November 1st 1863 to February 1st 1864. The answer set up, amongst other defences, the statute of frauds.

At the trial in the superior court, before *Rockwell,* J., it appeared that the plaintiff preached for the defendants until the end of December 1863, and was ready to preach during the month of January 1864, but the defendants would not allow him to do so; and it did not appear that he performed any specific parochial duties during that month, though he was there ready to do so.

In order to prove his contract, the plaintiff put in evidence the following correspondence.

"Dorchester, January 1, 1863. Rev. J. B. Johnson : Dear Sir : At a meeting of Trinity Church Society held this evening, it

was unanimously resolved that, whereas said society, at its meeting held December 16th 1862, voted that a committee of two be appointed to confer with the Rev. J. B. Johnson in regaru to securing his services and residence among us as a pastor for the year succeeding January 1st 1863, and to inform him that the society are willing to pay therefor a salary of twelve hundred dollars per year, and giving a vacation of two weeks in the month of August; and whereas the society still entertain the hope that Mr. Johnson may accept said proposal; that Messrs. Clay and Snow be the committee to confer further with Mr. Johnson, and to solicit his acceptance of our proposal. A. E. Young, secretary Trinity Church Society."

To this letter the plaintiff replied as follows :

"Waltham, January 6th, 1863. Messrs. Clay and Snow: Gentlemen: The invitation which the Trinitarian Congregational Society of Neponset, through you as their committee, have been pleased to extend to me to act as pastor of your society for the year to come, I have, as you are already aware, informally accepted. This note is simply a formal acknowledgment and acceptance. I am to preach, as signified in a previous line to Mr. Young, the present month as usual. The year for which I am engaged commencing with the first of February current, and payments, at rate proposed, quarterly from that date. As to vacation, it will give me pleasure so to supply the pulpit the present year that no additional expense may fall upon the society. I am, as ever, yours in Christian love J. B. Johnson."

The plaintiff was also allowed to testify, against the defendants' objection, to a certain conversation between himself and Mr. Clay and Mr. Young, on the 5th of January 1863, as to the terms of the contract; as to which, however, he was contradicted by them.

It appeared that the above letter of the plaintiff was duly received and passed to the secretary of the society, who read it o the society at their annual meeting in March 1863, but no action was taken upon it and no reply was made to the plaintiff and he continued to preach as their pastor.

The plaintiff introduced in evidence the record of a meeting of the society on the 5th of December 1863, when a vote was passed appointing a committee to wait upon him and request him to withdraw and terminate his pastoral relation with them " for various reasons, a part of which are as follows, to wit: that his letter to Mr. Brooks relative to his gas bill was a misrepresentation of facts and injurious to the society, inasmuch as he therein asserts that the society is indebted to him in the sum of three hundred dollars, the payment of which has for some time been daily and hourly expected; whereas the facts are, Mr. Johnson's gas bill amounting to about five dollars was due from him to the gas company October 1st, at which time the society were not indebted to him in the least, and would not become so indebted to him by the terms of the agreement until November following."

The plaintiff was also allowed, under objection, to introduce in evidence the following extract from the record of a meeting of the society held on the 12th of December 1863 : " Resolved, that a committee of two be appointed to wait upon Mr. Johnson and inform him that, inasmuch as he has refused to withdraw from the pulpit of the society as requested, therefore the society propose to him as follows : that for the six intervening Sabbaths from December 14th to February 1st the society will supply the pulpit, making their own selections and paying therefor whatever sum is just and proper, and the residue to Mr. Johnson at the rate of $1200 per annum.

" Voted, that the committee be instructed to require of Mr. Johnson an immediate answer to the foregoing proposition as a compromise."

The plaintiff was also allowed, under objection, to read and put into the case a part of a sermon which he said he preached to the usual congregation of the defendants' society on the first Sunday of February 1863, and in which he spoke of their meeting " at the beginning of a year to us of united Christian labor."

The defendants brought into court the sum of two hundred dollars, which the plaintiff took ; and they objected that under the pleadings the plaintiff could not recover except for services

prior to January 1st 1864. The judge, however, overruled the objection.

The jury returned a verdict for the plaintiff for one hundred and nine dollars, under instructions authorizing them to do so; and the defendants alleged exceptions.

*W. Colburn*, for the defendants. 1. The contract relied upon was within the statute of frauds, and there was no sufficient note or memorandum in writing thereof. Gen. Sts. *c.* 105, § 1, 2. The conversation with Clay and Young was inadmissible. 3. The extract from the sermon was incompetent evidence. The occasion forbade a reply to it; no one was authorized to speak for the defendants; it was merely parol evidence of a. contract within the statute of frauds; and as a contract, or proof of one, was in violation of the statutes for the observance of the Lord's day. 4. The resolutions of December 12th were merely propositions for a compromise. 5. Under the pleadings, no recovery can be had for the month of January. 2 Greenl. Ev. § 104. *Moulton* v. *Trask*, 9 Met. 577.

*J. Nickerson*, for the plaintiff.

HOAR, J. 1. The declaration is sufficient to maintain the plaintiff's action, if the contract upon which he relied was supported by the evidence. *Thompson* v. *Catholic Cong. Soc. in Rehoboth*, 5 Pick. 469. *Sheldon* v. *Cong. Parish in Easton*, 24 Pick. 481 His readiness to perform his duties as a minister during the whole time for which he was settled, if he was prevented from performing them by the act of the defendants, would enable him to sue upon an account annexed, nothing remaining to be done under the contract but the payment of money.

2. The defence of the statute of frauds is not available to the defendants, if the plaintiff proved a contract for the year ending February 1st 1864. In that case it would be a contract not to be performed within a year from the time it was made, and the statute would require a memorandum in writing. Such a memorandum is supplied by the letter of January 1st 1863, and the recital in the votes passed at the meeting of the society on the 5th of December 1863, which together contain all the terms of the contract. The proposal contained in the letter was accepted

by the plaintiff in his letter of January 6th 1863, with two modifications; that the year of service should begin on the first of February instead of the first of January, and that the salary should be paid quarterly. It then remains to show, by a writing signed by the defendants or an authorized agent, that they assented to these modifications; and we think the statement in the vote of December 5th is sufficient to authorize the conclusion that such was the fact. There is nothing in the vote which is inadmissible in evidence on the ground that it was passed as the offer of a compromise. It is a recital of facts which are alleged as a reason for asking the plaintiff to terminate his relations with the society.

3. But while we decide that the contract on which the plaintiff declares is supported by a sufficient memorandum under the statute of frauds, if the contract itself was proved to the satisfaction of the jury, it is important to observe the distinction between the contract and the memorandum. The memorandum is not the contract, although it may be evidence of it. It was for the jury to find whether the contract declared on was the real contract between the parties; and they must do it upon competent evidence. And as evidence was admitted against the objection of the defendants which appears to us to have been incompetent, the exceptions must for that reason be sustained and a new trial granted.

No authority was shown to have been conferred on the witnesses Clay and Young to make admissions binding the defendants; and the evidence of their declarations was therefore incompetent to support the plaintiff's case.

The vote of December 12th 1863 was expressly stated to be the offer of a compromise, and should not therefore have been admitted to prejudice the defendants.

The extract from the plaintiff's sermon, if it proved anything, was merely his declaration of a fact in his own favor, not communicated to the defendants in their corporate capacity, and made under circumstances which could hardly require or admit a contradiction or disclaimer. That the congregation heard it without reply or comment had no tendency to prove that the defendants assented to its truth. *Exceptions sustained.*