Complainant, as purchaser, brings this suit against defendant, as vendor, to compel the specific performance by the latter of its agreement to convey the lands hereinafter described. The defendant, a municipality, owned, having acquired same for public use, a tract of land in said municipality described as the Fourteenth Street Bath House, a part of which, being needed for widening the approach to the New Jersey Vehicular Tunnel, was, by condemnation, taken over for that purpose by the state bridge and tunnel commission, thereby rendering the remainder of said tract — particularly described in the notice of sale hereinafter set forth — unfit and useless for the purpose for which defendant had originally acquired it. The director of parks and public property of said defendant having made his report to said effect, coupled with his recommendation that the remainder of said described lands be sold at public sale, to its board of commissioners, the latter, at its meeting of October 19th, 1926, unanimously adopted the resolution, Exhibit C-1, concurring in said report, deciding the sale thereby recommended to be for the best interests of said defendant, ordering said sale to be made and authorizing and directing the city clerk, pursuant to the provisions of P.L. 1917 ch. 152, as amended, to advertise in the official newspapers of the city, the following notice of sale:
 "PUBLIC NOTICE. AUCTION SALE OF CITY PROPERTY.
Sale to be held in assembly chambers, city hall, Jersey City, New Jersey, Thursday, November 18th, 1926, at eight P.M. Sale to be conducted by William B. Quinn, commissioner of revenue and finance; pursuant to the provisions of chapter 152 (P.L. 1917), as amended, and in accordance with the resolution of the board of commissioners of the mayor and aldermen of Jersey City, duly adopted October 19th, 1926, all of the following described lands and premises, with the appurtenances, that is to say: All those certain lots or parts of land and premises hereinafter particularly described, situate, lying and being in the city of Jersey City, in the county of Hudson and *Page 473 
State of New Jersey, which are not fit for public use and are not suitable for any public purpose, to wit: lot 7a, lot 6, lot 5, lot 9, lot 10a, lot 11a, lot 12a, all in block 290, as shown on the official assessment map of Jersey City."
Pursuant to the express authorization and direction of the foregoing resolution, defendant's city clerk caused said notice of sale (Exhibit C-2) to be published in The Jersey Journal, in the manner and form prescribed thereby and in accordance with the provisions of P.L. 1917 ch. 152, as amended, applicable thereto. At the time, place and in the manner specified in said resolution and public notice of sale, the said lands were offered for sale, at public auction, to a large number of persons then and there assembled for said purpose, and at which, no one having bid as much as, or more than, complainant, he having bid the sum of $30,500, the said lands were struck off and sold to him for the amount of his said bid, whereupon he immediately subscribed the conditions of sale (Exhibit C-3), which read as follows:
"Terms and conditions of auction sale of real estate now owned by and in possession of the mayor and aldermen of Jersey City, to be held Thursday evening, November 18th, 1926, at eight o'clock in the assembly chamber, city hall, Jersey City.
The premises shown on the annexed map of sale will be sold in fee-simple, as per order of the board of commissioners of Jersey City, under the direction of William B. Quinn, director of revenue and finance, subject to the following signed terms of sale:
1. The purchaser shall pay twenty per cent. of the accepted bid to the city treasurer on the day of sale.
2. That the deed shall be delivered at the office of the city clerk on November 30th, 1926, upon the payment into the city treasury of the balance of the purchase-money.
3. In case the purchaser fails to comply with the conditions of sale, the property shall be resold, and the amount of the deficiency, if any, charged to the payment heretofore made on account thereof, by the first purchaser.
4. The city shall deliver to the purchaser a deed conveying the lands in fee-simple, containing a covenant of warranty on the part of the city, limited, however, to the amount of the purchase-money paid.
5. The property shall be sold free and clear of all taxes, assessments, water rents, and other city liens to the date of sale."
Complainant, in accordance with the foregoing terms of sale, immediately paid to the city treasurer, by check, the sum *Page 474 
of $6,100, representing twenty per cent. of his accepted bid, which check (Exhibit C-4) was accepted and cashed by, having been deposited to the account of, the said defendant, and in return for which he received the official receipt of said city treasurer (Exhibit C-5), duly signed by the latter as such, and counter-signed by its comptroller, dated November 18th, 1926, whereby it acknowledged receipt from Raymond Buckley, the complainant, of the sum of $6,100 on account of the purchase price of the land in question, sold at the absolute sale thereof made on November 18th, 1926, by the mayor and aldermen of Jersey City for the sum of $30,500, all of which facts were particularly set forth in said receipt.
It was conceded that complainant was at all times ready, willing and able to perform, and tendered performance of, his part of the agreement in question, but that defendant failed and refused to carry out its part of said agreement of sale, attempting, instead, by a resolution adopted on November 23d 1926 (Exhibit D-1), to reject complainant's bid and ordering the return of complainant's deposit and the resale of the lands in question whereupon complainant brought this suit.
All of the facts above stated, including the fact that the sale in question was conducted, and the notice thereof was published, in accordance with the provisions of P.L. 1917 ch. 152, as amended, authorizing and governing such sales, were conceded. The defendant answers and urges in support of its contention that it should not be compelled to perform because (1) the sale was made subject to confirmation by its board of commissioners, who declined to do so; (2) the agreement evidencing said sale, not being in a writing, subscribed by it, is within the provisions of the statute of frauds, and is, therefore, unenforceable as against it, and (3) the sale price is inadequate.
From the evidence adduced it does not satisfactorily appear that, upon the commencement of the sale, but prior to the calling for bids, an announcement was made that the sale was to be subject to confirmation by the board of commissioners, *Page 475 
as is contended by the defendant; especially in view of complainant's denial and the fact that no such reservation was provided for or sanctioned by the resolution, notice of sale or the terms of sale.
Being for the sale of land, and, therefore, within the provisions of the statute of frauds, not only must the agreement, or memorandum thereof, be in writing, but it must also contain the full terms of the contract. Johnson Miller v. Buck, 6Vr. 338; Schenck v. Spring Lake, c., Improvement Co., 2 Dick.Ch. Rep. 44; Grafton v. Cummings, 99 U.S. 100; Bowers v.Glucksman, 68 N.J. Law 146.
As such its terms can either be varied or added to by parole evidence. Lozier v. Hill, 68 N.J. Eq. 300, and Johnson v.Miller and Buck, 35 N.J. Law 338, wherein our supreme court says: "To admit parole evidence of any of the terms of the contract with respect to which it, or the memorandum, is silent, would open the door to the very mischief, the statute was intended to suppress." Consequently, it follows that, even if this condition of sale had been announced, it could not legally be deemed to be a part of the contract under consideration, since it was not embodied in or referred to by the resolution, notice of sale or terms of sale, all of which, as hereinbefore indicated, contain the full terms of the sale, and as such constitute the written agreement between the parties hereto, which could not be added to, altered or amended by any parole testimony, objection to the offer of which was duly made on behalf of complainant. Furthermore, since the resolution authorizing the sale or the notice of sale contained no authorization to the person conducting it to impose any such condition upon the sale, as claimed by defendant, his act in so doing must be held to be nugatory, and as being an unauthorized and ineffective attempt on his part to enlarge upon or add to the conditions of sale as prescribed by the resolution, notice of sale and terms of sale.
An examination of the statute, conferring the power of sale in such cases upon the municipality, clearly discloses that neither the city nor its commissioners had any right *Page 476 
or power to impose any such condition or reservation on such sale, and consequently no such power could be exercised by the person conducting it for them. At the time of enacting this legislation (P.L. 1917 ch. 152, as amended), the legislature had before it, and was dealing with, the problem of conferring power upon municipalities to dispose of surplus lands, under such regulations, however, as would safeguard the public interests. Section 9 of this act expressly provides that such lands shall not be sold except at public sale, to the highest bidder. Thus under the well-settled principles of law, there can be no room left for construction or interpretation, and its express language becomes the sole and imperative guide in connection with the exercise of said power. Hale v. Council of Town of Kearny,99 N.J. Law 334.
Defendant, without advancing any reason or citing any authority, contends that it possesses and retains an inherent right to confirm or reject such sale, since sections 9 and 11 of chapter 131 (P.L. 1924) do not expressly deprive it thereof. With such a contention I am unable to concur. Even assuming, but not so deciding, that defendant, prior to the enactment of said sections, possessed such power, nevertheless, the legislature, having by said sections conferred upon municipalities the power to sell surplus lands, also regulating the exercise thereof, thereby framed a new and general rule covering said subject-matter, and thereby discarded and nullified, in favor of such later rules, all earlier and different rules, touching said subject-matter. Harrington's Sons Co. v. Jersey City,78 N.J. Law 610; Industrial School District v. Whitehead, 2 Beas. 290;Bracken v. Smith, 12 Stew. Eq. 169; DeGinther v. New JerseyHome, 29 Vr. 354; Smith v. Hightstown, 42 Vr. 536; Crown v.Regna Construction Co., 104 N.J. Eq. 469.
The intent of the legislature, in specifically providing that the land was to be sold to the "highest bidder" — and this without reservation — undoubtedly was to inspire the confidence of the public in such sales and to prevent the property from being sold to anyone but the "highest bidder." Having this purpose in mind — and knowing that such power, *Page 477 
if placed in the hands of indifferent or unscrupulous officials, could be used as a means of bringing about the very condition of affairs which the statute was designed to make impossible — the legislature did not see fit to provide that a sale made to the "highest bidder" should remain subject to confirmation or rejection by the municipality or any of its boards or officials.
Had it intended otherwise, it would have said so, as such required the use of but a few words. Not having included any such provision in said sections, it must, and only can, be assumed that it did not intend to confer any such power upon the municipality or any of its boards or officials. In re City ofPassaic, 94 N.J. Law 384. Having, by said sections, clearly manifested its intent that the "highest bidder" should legally be entitled to the property — irrespective of the personal whims or wishes of any boards or officials of the municipality — there can be no room left for construction or interpretation, and thus its express language becomes the sole and imperative guide of the municipality in the conduct and making of such sales. Hale v.Council of Town of Kearny, supra.
Even if these sections permitted of any construction, nevertheless the one contended for by defendant would, of necessity, operate in amplification of the explicit and uncertain language of the legislature, which, upon the plainest principles of law, is unalterable by implication. Woolley v. Geneva WagonCo., 59 N.J. Law 278; Reischman v. Masker, 69 N.J. Law 353.
In view of the resolution authorizing said sale, the public notice thereof, sections 9 and 11 of chapter 131 (P.L. 1924), and the authorities in point, I conclude that even if an announcement had been made, such as is claimed by defendant, it nevertheless would be wholly ineffective and invalid.
Defendant further contends that the agreement — or a memorandum thereof, not being in writing, subscribed by it — is within the provisions of the statute of frauds and is unenforceable as against it. Were such the fact with reference to said agreement, complainant's suit would unquestionably *Page 478 
have to fail. The evidence, however, clearly establishes, and I find therefrom, that the agreement between the parties to this litigation is in writing, and meets and satisfies the requirements of the statute of frauds, as hereinafter pointed out by me.
Being a municipal corporation, it is apparent that defendant can make no note or memorandum, nor subscribe the same, except by and through the instrumentality of one of its officers or agents. As such, it ordinarily acts through its legislative or governing body, whose action is expressed and recorded, as it takes place, in its minute books kept for that purpose by its clerk or secretary. Hence, its agreements are rarely oral, but simultaneously with their making, are, on the instant of formation, put into writing, and thus a note or memorandum of them is made in said minutes, which being signed by the clerk in charge thereof, constitutes a note or memorandum, made by it, by its duly authorized agent, sufficient to comply with the requirements of the statute of frauds. As such it meets and satisfies the purpose and intention of the law, since it provides an enduring and unchanging evidence of the agreement, for there is some note or memorandum of it in writing, subscribed by the party to be charged thereby, the subscription being made by an authorized agent. McManus v. City of Boston, 171 Mass. 152;50 N.E. Rep. 607; Chase v. Lowell, 7 Gray 33; Johnson v. TrinityChurch Society, 93 Mass. 123; Tufts v. Plymouth Gold MiningCo., 14 Allen 407; Townsend v. Hargraves, 118 Mass. 325; ArgusCo. v. Mayor, c., of Albany, 55 N.Y. 495; Dykers v.Townsend, 24 N.Y. 57; Grimes v. Hamilton Co., 37 Iowa 290;Marden v. Champlin, 17 R.I. 423; 22 Atl. Rep. 938; City ofVincennes v. Citizens Gaslight Co., 132 Ind. 114;31 N.E. Rep. 573.
While the contracts of a municipal corporation are ordinarily executed and signed on its behalf by one or more of its duly authorized officers, it is also well established by the great weight of authority that a contract, binding upon a municipality may be brought into existence by a vote of the municipal council.Argus Co. v. Mayor, c., of Albany; McManus *Page 479 
v. City of Boston; Chase v. Lowell, supra, and other authorities cited in the preceding paragraph.
Thus an ordinance or a resolution, which is in effect an offer by a municipal corporation, upon acceptance by the party to whom it was addressed becomes a contract. (Cases cited in preceding paragraph.) And where the legislature has authorized a municipality to act or contract, without having required same to be done by ordinance, the municipal legislative body may contract either by a vote upon a motion or by the passage of a resolution.Mayor, c., of Jersey City v. Town of Harrison,71 N.J. Law 69; Illinois, c., Bank v. City of Arkansas, 76 Fed. Rep. 271.
In the case at bar the resolution of October 19th, 1926,Exhibit C-1 was adopted by the unanimous vote of the mayor and all of the commissioners of the defendant municipality. By it, the land in question was specifically directed to be sold by Commissioner Quinn, acting for the defendant, at public auction to be held at the time and place therein specified, and defendant's corporation counsel was authorized and directed to draw a deed from defendant to the purchaser for said property, which deed it specifically authorized and directed defendant's mayor to execute on its behalf and its corporate seal to be thereto affixed by its city clerk.
Having provided for all of the details relative to the conduct and consummation of said sale, without authorizing or even referring to the execution of any contract, it is apparent that said resolution didn't contemplate the making of any formal contract. Nothing more than its acceptance by the highest bidder was contemplated or required by it, at said sale, to make it a binding contract. As such, it constituted an offer on behalf of the municipality, which, upon its acceptance by the highest bidder, became an absolute binding contract (McManus v. Cityof Boston; City of Vincennes v. Citizens Gas Light Co.; ArgusCo. v. Albany, c., supra), and is clearly distinguishable from that class of ordinances or resolutions which contemplate or authorize the making of a formal contract pursuant thereto. *Page 480 
Nor have I overlooked the case of Mayor, c., of Jersey City
v. Town of Harrison, 72 N.J. Law 185; reversing,71 N.J. Law 69, wherein Chancellor Magie, on page 189 of the opinion, assigned the following as the reasons for reversal:
"The resolution of the legislative board of the town is not signed by the town, and this resolution contemplated a contract to be made and executed by certain persons expressly authorized to sign for the town. Donnelly v. Currie Hardware Co., 37 Vr.388. In the next place, the proposition had not been communicated by Harrison to Jersey City. A proposition for a contract, to be competent to be accepted, must be communicated to the party with whom the contract is proposed. It will not be sufficient that the latter acquire knowledge of it unless the knowledge is acquired with the express or implied intention of the proposing party."
However, the two facts, lacking in the above case, are both present in the case before me. Defendant, by resolution (ExhibitC-1), expressly authorized and directed its city clerk to advertise notice of its offer to sell the lands in question to the highest bidder at the public sale therein referred to. Pursuant thereto, he, as its duly authorized agent, subscribed and published said notice, embodying defendant's said offer of sale. Thus, it is apparent that both the subscription and communication of the defendant's offer or proposal of sale as contemplated, and required by it are both present in the case at bar, both of which were lacking in the case of Mayor, c., ofJersey City v. Town of Harrison, resulting in its reversal as was pointed out by Chancellor Magie.
Nor is it necessary that the authority of the city clerk to subscribe and advertise the said notice of sale be evidenced by some written instrument. The law is now well settled, as is illustrated by a long line of cases, that authority to sign an agreement or memorandum thereof, binding on the principle under the statute of frauds, may be conferred upon an agent by parol.Lindley v. Keim, 54 N.J. Eq. 418; 34 Atl. Rep. 1073; Schmidt
v. Quinzel, 55 N.J. Eq. 792; 25 R.C.L. 324. *Page 481 
 Exhibit C-2, the notice embodying the offer of sale, was subscribed by defendant, through its city clerk, and expressly referred to Exhibit C-1, the resolution authorizing and directing said sale and the publication of the notice thereof. A copy of Exhibit C-2 was annexed to, and referred to in (Exhibit C-3) the conditions of sale, which were subscribed by complainant. The receipt (Exhibit C-5) subscribed by defendant through its treasurer and comptroller, specified the property in question, as well as the time and place of the sale (including the names of the vendor and vendee), which facts were also set forth in Exhibits C-1, C-2 and C-3. Each of these exhibits — containing internal references to each other, and relating to the sale of the land in question, the subject-matter of the contract — are thereby so connected to each other that they may be deemed and considered as one entire document constituting the contract between the litigating parties. This is in full harmony with the now well-settled doctrine of law that a complete contract, binding under the statute of frauds, may be gathered from letters, writings and other documentary evidence existing between the parties, relating to the subject-matter of the contract, and so connected with each other that they may be fairly said to constitute one paper relating to the contract, and this though only one of the writings, may be signed by the party to be charged. Charlton v. Columbia, c., Co., 67 N.J. Eq. 629; 60 Atl. Rep. 192; 69 L.R.A. 394; Gough v. Williamson,62 N.J. Eq. 526; Bowers v. Glucksman, 68 N.J. Law 146;52 Atl. Rep. 218; Johnson v. Buck, 35 N.J. Law 338; Gerli v.Poidebard Silk Manufacturing Co., 57 N.J. Law 432; Bell v.Bruen, 42 U.S. 169; Salmon Falls Manufacturing Co. v. Goddard,55 U.S. 446; Bayne v. Wiggins, 139 U.S. 210; Bibb v. Allen,149 U.S. 481; Halsell v. Renfrow, 202 U.S. 287; Freeland v.Ritz, 154 Mass. 257; 28 N.E. Rep. 226; Lee v. Butler,167 Mass. 426; 46 N.E. Rep. 52; Argus Co. v. Albany, 55 N.Y. 495;Sanders v. Pottlitzer Bros. Fruit Co., 144 N.Y. 209;39 N.E. Rep. 75; Wilson v. Lewiston Mill Co., 150 N.Y. 314;44 N.E. Rep. 959. *Page 482 
Nor has the application of this principle of law been restricted or limited merely to papers already in existence when the instrument signed by the party to be charged is executed, provided the paper referred to is actually in existence when the action is brought. Gough v. Williamson, supra; Freeland v.Ritz, 154 Mass. 257; 28 N.E. Rep. 226; 12 L.R.A. 561; Lee v.Butler, 167 Mass. 426; 46 N.E. Rep. 52.
Turning now to the case at bar, there has been offered and received in evidence, without objection (a) Exhibit C-1, which is a resolution, unanimously adopted by the governing body of the defendant municipality, authorizing and directing the sale of the land in question, specifying the manner in which, the time when, and the place where, said sale is to be held, prescribing the notice to be given thereof and the name of the person to conduct same, and also providing for the preparation of the deed, authorizing and directing the mayor to execute same and the clerk to affix the corporate seal thereto, and to deliver same to the purchaser; (b) Exhibit C-2, the public notice of the time when, and the place where, said lands would be offered at public auction for sale to the highest bidder, which was subscribed by defendant, by its city clerk; (c) Exhibit C-3, the written terms of sale, referring therein to the lands in question and setting forth the terms and conditions governing the sale thereof, which were subscribed by complainant; (d) Exhibit C-4, complainant's check for $6,100, payable and delivered to defendant's treasurer, which was received, deposited to, and cashed for, the account of defendant; (e) Exhibit C-5, the receipt, which was issued and delivered by defendant to complainant, and which was signed by its treasurer and counter-signed by its comptroller. This receipt describes the lands in question as having been sold at public sale, by defendant to complainant, specifies the date of the sale, and acknowledges the receipt of $6,100 from complainant on account of the sale price of $30,500. As herein before indicated, each of these exhibits refer, and are so connected to each other, that they may be taken together as constituting the contract between the parties to this litigation. Charlton v. Columbia, c.,Co., *Page 483 67 N.J. Eq. 629, and other cases above cited. Thus the contract in question, as constituted by these exhibits, one or more of which are signed by the party to be charged, or its authorized agent, satisfies the requirements of the statute of frauds, and as such may be specifically enforced.
The evidence clearly showed, and I am satisfied therefrom, that the postscript appearing upon the receipt (Exhibit C-5) was not intended to, and did not, apply to the sale in question. This receipt was a printed form, not especially prepared for sales such as the one under consideration, and the postscript in question was printed and appeared below the signatures, without in any wise being referred to in the body of the receipt itself. Were it otherwise, this postscript must be regarded at most as an ineffective, as well as an unauthorized, attempt by the defendant, without the consent or acquiescence of the complainant, to change the terms of a contract already existing between them, through the instrumentality of including in a mere receipt issued by it, terms in addition to, or contradictory of, those contained in said contract. That such cannot legally be done is so well established as to need no citation of any authority on my part.
Having already concluded from the evidence (Exhibits C-1,C-2, C-3, C-4 and C-5) that a legal and effectual contract was already in existence between the parties on November 18th, 1926, it must necessarily follow that the resolution of November 23d 1926 (Exhibit D-1), can be regarded only as an ineffective attempt to rescind or dissolve, by the mere will and act of the defendant, without the consent or acquiescence of complainant, a legal and binding contract, already entered into and existing between them. Chase v. City of Lowell (Mass.),7 Gray 33; City of Vincennes v. Citizens Gas Light Co.,132 Ind. 114; 36 N.E. Rep. 573.
Defendant further contends that it ought not to be required to perform the contract in question merely because, as claimed by it, the price is inadequate. The evidence, however, established quite the contrary to be the fact, and I find therefrom that the price was adequate. The testimony clearly showed that the auction sale was well attended, and that there *Page 484 
were, amongst those present, some of the most reputable and best qualified realtors, as well as most extensive property owners, of Jersey City, all of whom, concededly, were conversant and familiar with real estate values, and especially with the value of the property in question. Although these persons were interested in acquiring said property, having participated in the bidding therefor, not one of them would bid more than, or even as much as, complainant did. As against this convincing proof of adequacy of price, defendant merely produced two real estate experts, hired and paid by it, who based their opinion as to the value of the property in question, not upon its market value, but upon what it would be worth to someone desiring to use it for some special purpose, which evidence, of course, was both incompetent and unsatisfactory to establish the value of the property in question.
Defendant having neither charged nor shown any fraud in connection with the conduct or the making of the sale in question, this court will not refrain from decreeing specific performance as it is likely to do in those cases wherein the price is so inadequate or exorbitant as to make the contract unconscionable. McManus v. City of Boston, 171 Mass. 152;15 N.E. Rep. 607.
And it has not been proven, or even as much as claimed, in the case at bar, that the price is so inadequate as to make the contract unconscionable, and as I find from the evidence that there exists a valid and binding contract on the part of the defendant municipality to sell, and on the part of the complainant to buy, the land in question, performance of which has been tendered by complainant and refused by defendant, I have concluded that complainant is entitled to a decree compelling defendant to specifically perform, and such will be the decree of this court. *Page 485